The State v. Deuel.

---

THE STATE OF KANSAS v. MARION DEUEL.

No. 12,664.   (66 Pac. 1037.)

SYLLABUS BY THE COURT.

1. STATUTORY CONSTRUCTION—*Punctuation and Capitalization.*
Where a particular clause or sentence of a statute is so ungram-
matical, or so punctuated, as not to make sense, and the intention
of the legislature is clearly ascertainable from the context and
from a statute *in pari materia*, this court will put that construc-
tion on it intended by the legislature, and, for such purpose, may
change the punctuation and capitalization to express such inten-
tion.

2. LARCENY—*Information and Proof—Variance.* There is no
variance between an information that charged the property stolen
to have been a "certain G. W. Wells make, heavy, new cowboy
saddle," and evidence which proves that the article stolen was a
"G. W. Wells make," "cowboy saddle," although the evidence
proved that the saddle had been in use about two years; at
most, the word "new" is only a comparative term, while the other
descriptive words are exact and definite.

3. ———— *Presumption from Possession.* It is error for a court
to instruct a jury that the unexplained possession of the fruits of
crime immediately after its commission is conclusive evidence of
the guilt of the possessor.

4 CRIMINAL PRACTICE—*Office of Evidence of Previous Good
Character.* In a criminal prosecution involving the guilty knowl-
edge or intention of the defendant, evidence of previous good char-
acter is always admissible.   It is affirmative in its nature and
meets every criminating circumstance.   The weight to be given it
is exclusively within the province of the jury.   Not only should it
be admitted and considered as a defense, but, where the defendant
takes the stand in his own behalf, it stands as a recommendation

that he will speak the truth, and it should be considered by the jury in weighing his evidence. An instruction that tends to confine such evidence to any particular question involved in the prosecution is erroneous and prejudicial.

Appeal from Finney district court; Wm. Easton Hutchison, judge. Opinion filed December 7, 1901 (submitted in October). Division one. Reversed.

*A. A. Godard,* attorney-general, and *G. L. Miller,* county attorney, for The State.

*W. R. Hopkins,* and *H. F. Mason,* for appellant.

The opinion of the court was delivered by

Greene, J. : The appeal in this case is from a judgment of conviction and sentence by the district court of Finney county for petit larceny. It is contended that the court below erred in refusing to give certain instructions; in giving others objected to by the appellant; in overruling a motion for a new trial, and in rendering judgment and pronouncing sentence upon him.

The state resists the consideration of this cause by this court on the ground that it has no appellate juris-

1. Statutory construction— jurisdiction of supreme court.

diction in misdemeanors. If this be true, the only judgment that could be rendered would be a dismissal of the action. The argument is that section 1 of chapter 278, Laws of 1901, does not confer on this court jurisdiction in appeals from conviction in misdemeanors, but provides that it shall not have jurisdiction of such cases. In so far as such act has any application to the question under consideration, it reads as follows :

"The supreme court may reverse, vacate and modify a judgment of a district court or other court of record, except a probate court for errors appearing

on the record and in the reversal of such judgment
or order may reverse, vacate or modify any interme-
diate order involving the merits of the action or any
portion thereof.   The supreme court may also reverse,
vacate or modify any of the following orders of a dis-
trict court or other court of record, or a judge thereof,
except a probate court:  (1) A final order.   (2) An'
order that grants or refuses a continuance ; discharges,
vacates or modifies a provisional remedy ; that grants,
refuses, vacates or modifies an injunction ; that grants
or refuses a new trial ;  or that confirms or refuses to
confirm the report of a referee, or that sustains or
overrules a demurrer.   (3)  An order that involves the
merits of an action or some part thereof, but shall
have no jurisdiction unless the amount or value in
controversy exclusive of costs in civil actions exceeds
one hundred dollars and in misdemeanors.   And in
cases involving the tax or revenue laws, or the title
to real estate, or an action for damages in which
slander, libel, malicious prosecution or false impris-
onment is declared upon, or the constitution of this
state, or the constitution, laws or treaties of the United
States, and when the judge of the district or superior
court trying any case involving less than one hundred
dollars shall certify to the supreme court that the case
is one belonging to the excepted classes."   (Gen.
Stat. 1901, § 5019.)

The contention of the state is that the clause lim-
iting the jurisdiction of this court in civil actions
includes within it appeals from convictions in misde-
meanors ; that it is a positive denial of the jurisdic-
tion of this court in such cases.

The different subjects of subdivision 3 of said act
are inaccurately arranged.   The limitation placed
upon the jurisdiction of this court in civil actions is
disconnected from its qualifying clauses by the words
"and in misdemeanors," without reference to the
unity of the sentence, and the clause is abruptly
ended by a period before the sentence is completed.

The whole is ungrammatical and would be unintelligible were it not for certain well-known rules of construction. In the interpretation of a statute the object to be sought is the true intention of the legislature. This should be found in the language itself, if possible, and the statute should be read and interpreted according to its grammatical sense, unless it is clear that its author intended something else. This, however, is only one rule of construction. If this fails, or if the act is so ungrammatical as not to make sense, we should adopt some other. That part of the statute which causes trouble is not only ungrammatical, but it is illogical in its arrangement.

Mr. Sutherland, in, his work on Statutory Construction, section 260, says:

"Legislative enactments are not any more than any other writings to be defeated on account of mistakes, errors, or omissions, provided the intention of the legislature can be collected from the whole statute. . . . Where one word has been erroneously used for another, or a word omitted, and the context affords the means of correction, the proper word will be deemed substituted or supplied."

In the interpretation of statutes, the court will arrange and substitute, if necessary, to make the meaning clear. (*Hamilton v. Steamboat R. B. Hamilton*, 16 Ohio St. 428; *Allen v. Russell*, 39 id. 336.)

In *Shriedley v. State of Ohio*, 23 Ohio St. 130, 140, and in *Albright v. Payne*, 43 id. 8, 1 N. E. 16, it was said that, "in construing a statute, punctuation may aid, but does not control unless other means fail; and in rendering the meaning of a statute, punctuation may be changed or disregarded." This rule has been adopted in this state. (*Brook v. Blue Mound*, 61 Kan. 184, 59 Pac. 273; *Landrum v. Flannigan*, 60 id. 436, 56 Pac. 753.)

Another rule of interpretation is that other statutes *in pari materia* may be examined for the purpose of ascertaining the intention of the legislature. Our statutes have always provided for appeals in misdemeanors, if not to this court, to other courts of appeal, for which provisions have been made from time to time. Prior to 1895 our statutes provided for appeals in misdemeanors to this court. By chapter 96, Laws of 1895, the courts of appeals were created, and by section 9 of that act said courts were given exclusive appellate jurisdiction in all cases of misdemeanors. Immediately after the expiration of that court by limitation, the legislature passed the act in question, attempting to restore the jurisdiction of this court over some, if not all, the cases of which it had been deprived by the act of 1895. After the passage of the latter act, and until the passage of the act in question, this court did not exercise jurisdiction in appeals from conviction in misdemeanors; in fact, in every instance where it had been attempted to invoke its jurisdiction in such cases it has been denied. This was the settled law when the act of 1901 was passed.

To support the contention of the state, that this act expressly provided that this court should not have jurisdiction in such cases, would be to charge the legislature with having enacted an absurdity. It must be presumed that the legislature knew what the law then was, and if did not intend to confer jurisdiction on this court, in appeals from convictions in misdemeanors, it would not have referred to the subject at all. The only reason that can be offered for its reference to misdemeanors in the act is to authorize an appeal in such cases to this court. We think that is what was intended by this act, and it may be so read without doing violence to the rules of interpreta-

tion or construction. By placing a period after the word "dollars," and a comma after the word "misdemeanors," the sentence would then read :

"An order that involves the merits of an action or some part thereof, but shall have no jurisdiction unless the amount or value in controversy exclusive of costs in civil actions exceeds one hundred dollars. And in misdemeanors, and in cases involving the tax or revenue laws, or the title to real estate," etc.

This would make sense and express the evident intention of the legislature. The statute will be so read. The motion to dismiss is overruled.

The first assignment of error by appellant is that there was a fatal variance between the information and proof, and that for this reason the court erred in not instructing the jury to acquit the appellant. The charging part of the information is that the appellant and others "did then and there wilfully, intentionally, unlawfully and feloniously steal, take and carry away one certain G. W. Wells make, heavy, new cowboy saddle ; then and there of the value of thirty-five dollars." The proof was that, while the saddle had been well cared for, it had been in use about two years. This, it is claimed, did not meet the allegation that the article was a new saddle. This court cannot say, as matter of law, that there was a variance between the allegation and the proof. The word "new" is a comparative expression and, as applied to the article stolen, in its generally accepted sense, may have been correct. There are other terms used descriptive of the article stolen more definite than the word "new." It is said in the information that the saddle stolen was a "heavy saddle," a "cowboy saddle," a "G. W. Wells make." These words definitely describe the article alleged to

2. Immaterial variance.

The State v. Deuel.

have been stolen, and the proof corresponded with these descriptive words.

The court instructed the jury concerning the presumptions arising from the possession of recently stolen property :

"You are instructed that possession of the fruits of crime recently after its commission is *prima facie* evidence of guilty possession ; and, if unexplained either by direct evidence or by the attending circumstances, or by the character and habits of life of the possessor or otherwise, it is taken as conclusive.   Of course, it must be so recent after the time of the larceny as to render it morally certain that the possession could not have changed hands since the larceny."

3. Incorrect presumption of law.

This instruction cannot be sustained.   Neither the possession nor unexplained possession of the fruits of a recent larceny is, as matter of law, conclusive evidence of the guilt of the possessor.   They are facts which may be introduced in evidence, and it has been held by this court that, if the possession is immediate after the commission of the crime and unexplained, it is *prima facie* evidence of guilt, but nowhere have we been able to find an authority for saying, as matter of law, that it is conclusive.   The unexplained possession of a subject of a recent larceny is *prima facie* evidence of the guilt of the accused, and is sufficient to authorize the jury in finding a verdict of guilty, but, as in all other circumstances, the jury is the exclusive judge of its conclusiveness.

Error is also predicated on the following instruction :

"You are further instructed that the evidence of previous good character is competent in favor of the party accused of a crime, as tending to show he would not be likely to commit the crime alleged against him ;

and in this case, if you believe from the evidence that, prior to the commission of the alleged crime, the de-
**4. Previous good character.** fendant had always borne a good character for honesty and a law-abiding citizen among his acquaintances, and in the neighborhood where he lived, then it is a fact proper to be considered by you, with all the other evidence in the case, in determining the question whether the witnesses who have testified to facts tending to criminate the defendant have been mistaken, or have testified falsely or untruthfully; and if, after a proper consideration of all the evidence in the case, including that bearing upon his previous good character, you entertain any reasonable doubt of the defendant's guilt, then you should acquit him."

The last part of the instruction is specific, and directs the attention of the jury to this character of evidence and its office. It was the evident intention of the court to inform the jury that when they should come to consider the question of whether the witnesses for the prosecution who testified to facts tending to criminate the defendant were mistaken or testified falsely, they might consider the evidence of previous good character; and that the evidence went only to the question of whether the witnesses for the prosecution were mistaken or wilfully falsified.

Evidence of previous good character is affirmative, and the better rule is that, in every prosecution where guilty knowledge or intention is of the essence of the crime, however conclusive the evidence of such guilt may appear, the defendant may introduce evidence of previous good character. Experience teaches us that one whose previous life has been one of rectitude and honesty is not likely to commit a crime. There are exceptions, but they are only exceptions. Evidence of previous good character goes to meet every phase of a case involving the guilty knowledge or intention

Railway Co. v. Preston.

of a defendant, and should be considered by the jury in determining whether it is probable that the defendant is guilty; nor is such evidence confined to refuting the case made by the state, but, as in this case, where the defendant takes the witness-stand in his own behalf, evidence of previous good character is most important, and it was highly proper that the jury should (and no doubt would, if permitted) consider this evidence in determining his credibility and the weight to be attached to his testimony. This instruction deprived the defendant of these rights and is erroneous.

The judgment of the court below is reversed,

JOHNSTON, SMITH, ELLIS, JJ., concurring.