The State v. Gaunt.

---

No. 20,530.

THE STATE OF KANSAS, Appellee, v. GEORGE W. GAUNT, Appellant.

SYLLABUS BY THE COURT.

1. HOMICIDE — Evidence — Reputation of Defendant — Instructions. The defendant, in a criminal case, having offered no evidence regarding his reputation, no error is committed in refusing instructions to the effect that his character is presumed to be good and that this presumption is the equivalent of evidence, particularly where the court had instructed that he was to be regarded as of good character except so far as his own testimony might show the contrary.

2. SAME—Trial—Instructions. The refusal of various instructions in a homicide case held not to have been erroneous.

3. SAME—Witness—Child Five Years Old—Weight of Evidence. Whether a child of five years is competent to testify is ordinarily a question for the final determination of the trial court. The testimony of such a witness having been admitted it is proper to submit to the jury the question of the weight to be given it.

4. SAME. Where proper instructions are given regarding the consideration of the testimony of a five-year-old witness, it is not error to omit to refer specifically to that of another witness seven years of age, that matter being covered by the general charge.

5. HOMICIDE—Dying Statements of Deceased. In a prosecution for homicide it is not error to refuse a request for an instruction that the jury should consider the omission of the state to produce a dying statement of the deceased where the only evidence on this subject indicates that none was made.

6. SAME—Cross-examination. The discretion of the court in relation to the cross-examination by the defendant of his own witness held not to have been abused.

The State v. Gaunt.

7. SAME—*Evidence—Bad Reputation of Deceased.* In a prosecution for homicide, the state having admitted the bad reputation of the person killed, with respect to being peaceable and law-abiding, no error was committed in sustaining its objection to evidence that he had been divorced for adultery and cruelty, and had been prosecuted for various public offenses.

8. SAME—*Trial—Evidence.* The evidence held to warrant a conviction.

9. SAME—*Judgment—Indeterminate Sentence.* A judgment under the indeterminate sentence act held not to be invalid by reason of omitting to state the minimum length of the term—the law placing it at one year.

Appeal from Rawlins district court; WILLIAM S. LANGMADE, judge. Opinion filed May 6, 1916. Affirmed.

*M. A. Wilson,* of Atwood, *Joseph G. Waters,* and *John C. Waters,* both of Topeka, for the appellant.

*S. M. Brewster,* attorney-general, *John L. Hunt,* assistant attorney-general, and *C. A. P. Falconer,* county attorney, for the appellee.

The opinion of the court was delivered by

MASON, J.: George W. Gaunt was prosecuted for killing J. Lee Shaffer, the information charging murder in the first degree. He admitted the homicide, but asserted that he had acted in self-defense. He was convicted of manslaughter in the third degree, and appeals.

1. The defendant introduced no witnesses regarding his reputation. The court gave this instruction:

"The law presumes the defendant to be of good reputation until the contrary is shown. The defendant will therefore be held by you to be of good reputation and character except in so far as his own testimony or any admissions contained therein may affect his credibility as a witness."

The defendant complains of the refusal of the court to give a number of additional instructions which he asked on this point, including statements, among others, to the effect that the presumption of good character was substantive testimony and that it extended to every branch of the case where good reputation might serve him. Where witnesses have testified to the good reputation of a defendant it may be error to limit the effect of such evidence to some particular issue. (*The State v. Deuel,* 63 Kan. 811, 66 Pac. 1037.) But the instruc-

tion above quoted is not open to that objection. While it is often said that there is a presumption that the character of a defendant in a criminal case is good, the expression has been criticized, and practically all the courts that have passed upon the question have held that where the defendant offers no evidence on the subject no instruction whatever need be given regarding it. (Note, 46 L. R. A., n. s., 342; *Price v. United States,* 218 Fed. 149; *People v. Cruse,* 24 Cal. App. 497, 141 Pac. 936; *People v. Fleshman,* 26 Cal. App. 788, 148 Pac. 805; *State v. Knotts,* 168 N. Car. 173, 83 S. E. 972; *Durham v. State,* 128 Tenn. 636, 163 S. W. 447; *Robinson v. Commonwealth,* [Va. 1916] 87 S. E. 553.) An apparent exception is *Mullen v. United States,* 106 Fed. 892, but that was influenced by language of the federal supreme court (*Coffin v. United States,* 156 U. S. 432) the effect of which has been modified by later decisions. (*Coffin v. United States,* 162 U. S. 664; *Agnew v. United States,* 165 U. S. 36. See, 4 Wigmore on Evidence, § 2511, p. 3559, note 3.) No error was committed in refusing the instructions asked. That which was given was at least as favorable to the defendant as he had a right to demand.

2. The defendant also asked instructions to the effect that in determining who was the aggressor in the affray that led to the homicide, (1) the jury were bound to take into consideration the bad reputation of the deceased as to quarrelsomeness, and (2) had a right to consider the age, vigor and strength of the two men; (3) that any reasonable doubt as to who was the aggressor must be resolved in favor of the defendant; (4) that if a certain state of facts were found it devolved upon the state to show beyond a reasonable doubt that in the final altercation the defendant was the aggressor; (5) that the existence of certain stated conditions required a finding that the deceased was the aggressor; (6) that if after some controversy between them the defendant had left the room and closed the door, telling the deceased to come no further, not knowing that he intended following him, this might be considered as showing a purpose on the part of the defendant to retire and end the altercation; and (7) that if the deceased followed the defendant under these circumstances this might be regarded as tending to show a purpose on the part of the former to renew the altercation. There was nothing in the instructions to

suggest that the jury were not to give full consideration to all the evidence for whatever bearing it had on the case. There was no necessity for telling them that they should consider particular evidence as bearing on certain matters, especially where the connection was obvious, and for this reason no error was committed in refusing the first two requests above referred to. The third and fourth were sufficiently covered by a statement that in order to justify a conviction the state was required to prove every ingredient of the offense beyond a reasonable doubt, and by a full exposition of the law of self-defense. The fifth was objectionable as tending to invade the province of the jury. The sixth and seventh were mere suggestions as to what inferences might be drawn from particular facts, and were not necessary to an intelligent understanding of the case.

3. Bert Shaffer, the son of the deceased, a boy five years of age, was called as a witness by the state, and was permitted to testify. The court gave this instruction concerning his evidence:

"The court permitted Bert Shaffer, a boy of five years, to testify. While this is a very tender age you are instructed that age is not the test to be applied to the testimony of a witness. It is for you to determine from the intelligence of the witness, his memory concerning the things of which he has testified, his opportunity and ability to observe and know the things of which he has testified, the consistency of his statements and his ability of conveying his recollection correctly, what weight you shall give to his testimony, and in doing this you may take into consideration his size and age, together with all the other circumstances appearing on the trial relative to his testimony and the things of which he has testified."

The statute, in the enumeration of persons who are incompetent to testify, includes "children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly." (Civ. Code, § 321, subdiv. 2.) The defendant maintains that this law should have been quoted to the jury, and also that the court erroneously surrendered its power to determine the admissibility of the boy's testimony. No occasion existed for stating to the jury the provision of the statute. That related to the competence of the witness—to the question whether he should be allowed to testify at all—a matter with which the

jury were not concerned. The court passed upon his competency when it allowed him to testify, and left to the jury the question of the weight to be given the testimony. An argument is made in support of the contention that the boy's testimony, in some respects, was incredible, and showed that it was the result of impressions derived from others. This of course was a matter for the determination of the jury. At the trial, counsel for the defendant expressed willingness that the boy's testimony should go to the jury "just as it is for what it is worth," although later moving to strike it out. The trial court had a much better opportunity than a reviewing tribunal to judge of the admissibility of the evidence, and its decision must be regarded as final. Various instructions were asked, cautioning the jury against attaching too much credence or weight to the boy's testimony, but we think this matter was sufficiently covered by the part of the charge already stated.

4. Complaint is made because no specific reference was made in the instructions to another witness, seven years of age. The jury were told that they were the exclusive judges of the credit and value of the testimony of the various witnesses, and it can not be presumed that they failed to take account of the youth of this particular witness in deciding what weight to give his evidence.

5. The defendant complains of the refusal of a request to instruct the jury that if the deceased lived ten days after the fatal wound, they might consider the fact that no evidence had been introduced showing his version of the affray. The unexplained failure of a party to produce evidence within his control, which would naturally be in his interest, is said to be a fair matter for the consideration of the jury, and the refusal to give an instruction to that effect when requested has been held to constitute error. (38 Cyc. 1743, 1744.) The instruction here asked seems to assume that the deceased had made a statement regarding the affray under such circumstances as to render it admissible in evidence. The physician who attended the deceased testified that he was conscious for a number of days after his death had become inevitable, and after he knew this. But the physician repeated all that he remembered of his conversation, and none of it touched upon this matter. No other evidence was given on the subject. In this situation there could be no error in refusing the request.

6. The defendant offered to prove by Mrs. Cochran that Mrs. Bounds, the grandmother of Bert Shaffer, while he was testifying, had said to her: "They told the children not to say that Lee Shaffer started the quarrel." The defendant complains of the rejection of the evidence, but it was clearly hearsay and incompetent. Mrs. Bounds was later called to the stand by the defendant, and having testified that she had never talked with either of the children about the trial, was asked to repeat her conversation with Mrs. Cochran. An objection to the question was sustained and the ruling is complained of, an offer having been made to show by the witness that she had said in substance that "they," meaning herself and others, had told the boys to swear that Lee Shaffer had not started the quarrel. The examination was largely within the control of the trial court, which might have permitted cross-examination of the witness to discover whether she had made statements inconsistent with her testimony that she had not talked with the boys about what they were to swear to. But no question addressed directly to that phase of the matter was asked. It can not be said that the court abused its discretion in omitting to require a further investigation, or that error was committed in sustaining the objection to the question asked.

7. Complaint is made of the refusal to allow the introduction of a decree of divorce granted Shaffer's wife, with the petition on which it was founded, alleging adultery and extreme cruelty; the record of a conviction of Shaffer in the district court for selling liquor; and entries on the docket of the justice of the peace showing three criminal cases against him, one for assault and battery, the other upon charges not stated. The prosecution had admitted that Shaffer's reputation as to being peaceable and law-abiding was bad. The evidence excluded was not vitally important, even if admissible.

8. A further contention on which a reversal is asked is that the evidence did not warrant the verdict. In support of this view it is urged that the testimony of the two boys should be rejected. A review of the evidence in detail is not regarded as necessary. There was direct testimony besides that of the boys which tended to discredit the defendant's account of the affair, and circumstantial evidence having the same effect—for instance, that regarding the course of the fatal bullet and the

appearance of the wound.   The defendant and Lee Shaffer had conflicting claims with regard to a farm.   The immediate controversy out of which the homicide grew began in the rear room of a harness shop in which Shaffer was at work, the owner, John Elmore, being present.   The defendant stepped through the doorway, Shaffer following him, into the front room, where the fatal shot was fired.   The defendant testified that while in the rear room his hand was in his right overcoat pocket, and that he indicated to Shaffer by his actions that he had a gun; that he told Shaffer to stop; that if he had come on he would have used the gun then.   He was asked: "If he had come on would you have shot him in the presence of Johnny Elmore?"   He answered: "I would have shot him in the presence of Jesus Christ."

9.   The judgment was that the defendant should serve a term of not to exceed three years in the state penitentiary. This is objected to as not being an indeterminate sentence. The statute provides that a person convicted of a felony (other than murder or treason) shall be sentenced to the penitentiary for a term not to exceed the maximum nor less than the minimum provided by law.   (Crim. Code, § 272a.)   The penalty for manslaughter in the third degree is confinement and hard labor for a term not exceeding three years, or imprisonment in the county jail not less than six months.   (Gen. Stat. 1909, § 2517.)   A sentence for confinement and hard labor can not be less than one year.   (Gen. Stat. 1909, § 2791.) The judgment of the court recited the maximum limit and the law supplies the minimum.

The judgment is affirmed.