No. 45,564

STATE OF KANSAS, *Appellee*, v. GENE JONES, *Appellant*.

(466 P. 2d 283)

Opinion filed March 7, 1970.

*Ken W. Strobel,* of Dodge City, argued the cause, and was on the brief for the appellant.

*David L. Patton,* County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is a direct appeal by the defendant in a criminal action resulting from a conviction of statutory rape in violation of K. S. A. 21-424.

Various trial errors are asserted challenging the trial court's jurisdiction, the validity of the information and the admission of evidence.

The defendant, Gene Jones (appellant) was originally charged in a complaint which alleged the commission of the offense of statutory rape "on or about the 12th day of April, 1968." Thereafter a preliminary hearing was conducted on the 16th day of May, 1968. The defendant appeared with court-appointed counsel.

Following the preliminary hearing an original information was

filed alleging the offense occurred "on or about the 12th day of April, 1968."

On the morning of the 10th day of June, 1968, subpoenaes were issued by the defendant to three witnesses for the purpose of establishing an alibi for the date of April 12, 1968. About four hours after the issuance of these subpoenaes the state filed an amended information charging that the offense occurred "on or about or between the 6th day of April, 1968, and the 12th day of April, 1968." The original date set for trial was June 14, 1968.

Thereupon the defendant moved for and obtained a continuance of the trial to the September term of court. He was formally arraigned on October 15, 1968, on the amended information and a jury was impaneled to hear the case. On the following day the case was submitted to the jury and it returned a verdict of guilty as charged in the amended information.

Starlette Armentrout, the alleged victim, was the seven year old daughter of Karen Gay Jones. At the time in question she lived with her mother and the defendant and four sisters and one brother in the city of Bucklin, Kansas. Starlette had one other sister who was a patient in the Parsons State Hospital in Parsons, Kansas. Karen Jones had been married to Conrad Armentrout who was the father of all of the children. This marriage ended in divorce with the custody of all children going to the mother.

In the month of August, 1967, Starlette's mother met the defendant and at the end of September, 1967, the defendant began living with the family, although he and Starlette's mother did not enter into a formal marriage ceremony until the 20th day of April, 1968.

The family lived in Bucklin, Ford County, Kansas, where the defendant was employed by Albert Brau as a well driller. Starlette attended public school in Bucklin and was in the second grade.

On the 12th day of April, 1968, Starlette was admitted to the Greensburg, Kansas, hospital with severe bleeding from her vagina. She remained hospitalized for almost one month. Upon her release from the hospital, she, at the direction of the juvenile court, went to live with a foster family in Greensburg, Kansas.

The alleged crime was brought to light through a rather complex series of events. Starlette's maternal grandmother, Mrs. Archie Thompson, lived about one block from the home of Starlette in the city of Bucklin. The grandmother observed that Starlette had

missed school on Monday, April 8, 1968, but attended school the remainder of the week. It was not until approximately 8:00 o'clock on the evening on Good Friday, April 12, 1968, that she was taken to the hospital in Greensburg with severe hemorrhaging from her vagina. Upon examination by Dr. Bradley later in the evening, the defendant and Starlette's mother were told that Starlette had been molested. The doctor was told by Starlette's mother that the injury had been received by a fall on the stairs at home, and upon first examination the doctor had little reason to suspect anything else.

Throughout the trial Starlette's mother testified to nothing which would implicate the defendant in the crime. Starlette who also testified was a most reluctant witness.

On the 17th day of April, 1968, information first came to light which eventually led to the defendant's prosecution. On that date Mrs. Thompson visited Starlette in the hospital and questioned her. In response to her grandmother's questioning as to what had actually happened to put her in the hospital, the grandmother testified:

"She was very upset. She began to kind of cry, and she said, 'My daddy took me out and hurt me.' And I said, 'What did he do?' And she said, 'Well, he put something down there.' I said, 'What do you mean?' And she said, 'You know what I mean.' And she became more and more upset. And I said, 'Where did he take you?' And she said, 'It was in the car out in the country.'"

Dr. J. R. Bradley, the examining physician, testified he inquired of the mother when Starlette was brought to the hospital how the injury happened. He had observed the child had a tear in her vagina. The mother told him the child had fallen on a stair and this is the way it happened. He testified the little girl seemed to agree with her mother—that she had fallen on the stair.

When treatment for what appeared to be an external injury did not stop the bleeding, a more detailed examination was given and the injury was found quite severe. She was bleeding from numerous areas back up into the vagina, and the vagina appeared to be abnormally distended. The doctor felt a stair could not possibly have caused the type of tear and injury that this little girl had. He said it had to be something very large forced into the vagina, something rather pliable and something that could tear rather than cut.

Actually, *when* the injury was inflicted is one of the primary points of contention in this case.

At the preliminary hearing Dr. Bradley testified he thought the injury occurred within two hours prior to his examination, which would make the occurrence on the 12th day of April, 1968. Upon examination at the trial, however, Dr. Bradley testified it was entirely possible the injury could have been older than what he suspected. He explained this by saying there would be a clotting of the blood right in the area where the tears would have occurred which would have shut off this bleeding; that the vagina will hold clots for a period of time actually. He further said it was possible the child was injured approximately five or six days prior to the 12th.

Evidence elicited by leading questions put to Starlette upon her examination indicated the offense occurred after the movies on the Sunday night before she went to the hospital. The only evidence as to the date upon which the children were taken to the movies by the defendant was Saturday evening, April 6, 1968. Starlette also testified it was the night of "Saturday, Sunday." For the most part Starlette testified by giving affirmative answers to leading questions. From such testimony of Starlette it may be garnered the defendant took her out in his car in the country, took her underwear off, and committed the offense of statutory rape. Starlette also testified she promised the defendant she "wouldn't tell."

The appellant first contends the district court of Ford County, Kansas, had no jurisdiction over the alleged offense because the evidence clearly failed to establish venue of the offense in Ford County.

The appellant herein was charged with the crime of statutory rape alleged to have been committed in Ford County, Kansas.

Under K. S. A. 62-401 offenses committed against the laws of this state shall be punished in the county in which the offense is committed except as may be otherwise provided by law. This statutory provision is merely a codification of Section 10 of the Bill of Rights of the Constitution of the state of Kansas which guarantees to the accused in a criminal prosecution the right to a "speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

It is established by our decisions under the provisions of 62-401, *supra,* the venue of an offense is jurisdictional, and it must be proved to establish the jurisdiction of the court. It is not necessary to prove the jurisdictional facts of venue by specific question and answer that the offense occurred in the county. They may be established

by other competent evidence showing the offense was committed within the jurisdiction of the court. It has been said, however, to avoid prejudicial error the facts of venue ought always to be firmly established by the state. (*State v. Fields,* 182 Kan. 180, 318 P. 2d 1018, and *Addington v. State,* 199 Kan. 554, 431 P. 2d 532.)

The city of Bucklin is located within Ford County in the extreme southeast corner, being approximately five miles from Kiowa County on the east and six or seven miles from Clark County on the south.

It is the appellant's contention the best evidence offered by the state to prove that the offense was committed within Ford County was the testimony of Starlette that it occurred in her daddy's car in the country on Sunday night after the movies. It is argued this evidence raises the distinct possibility that the alleged offense took place in one of the adjoining counties and not in Ford County. The appellant concludes there is no competent evidence in the record to prove the jurisdiction of the Ford County district court.

The place where the offense occurred is a question of fact just as any other question to be determined by the jury. Among the instructions given to the jury was one which required it find beyond a reasonable doubt that the act complained of occurred within Ford County, Kansas. By its verdict of guilty the jury did find from the evidence presented that the offense occurred in Ford County.

Considering the entire record presented in this case, we cannot say the evidence upon which the jury based its finding was insufficient to sustain the finding that the offense was committed in Ford County. The appellant's family lived in Bucklin, the children were taken to the movies in Bucklin on the evening of Saturday, April 6, 1968, and there is no indication in the record the appellant drove an extended distance into the country on the night in question. We therefore conclude the district court of Ford County had jurisdiction to try the offense. (See *In re Rockwood,* 146 Kan. 386, 69 P. 2d 703.)

The appellant specifies that the district court erred by allowing the state to proceed to trial upon the amended information, which was so indefinite as to deny the appellant an adequate opportunity to prepare his defense, and in submitting to the jury that portion of instruction No. 4 which encompassed the ambiguous allegation as to time of commission of the alleged crime, all to the prejudice of the rights of the appellant.

It may be said the witnesses called by the appellant to testify on

his behalf established an airtight alibi as to the commission of the offense on the 12th day of April, 1968. It was established that the appellant had left for work on that day drilling a water well at some distance from the home prior to the time Starlette arose in the morning, and did not arrive home until after she had been taken to the hospital in Greensburg.

The appellant argues the trial court refused to make the state elect or specify the specific time upon which it relied for the occurrence, and the obvious effect was to foreclose the appellant from availing himself of a legitimate defense of alibi. He points out the evidence presented at the preliminary hearing clearly established that the injury to the girl occurred on April 12, 1968; that the original information was prepared in accordance with such evidence; but that when the defendant had established an airtight alibi for that date the state, realizing the vulnerability of its position, chose to hide behind the cloak of vagueness by amending the information to allege an indefinite and unascertainable time. This, it is contended, resulted in gross injustice and unfairness to the prejudice of the rights of the appellant. The appellant further argues the state knew the nature of the testimony to be elicited from its witnesses—that Starlette testified the act took place on Sunday evening after the movies. This date, it is argued, was ascertainable and available to the state before the time of trial.

The appellant contends he first became aware of the alleged date during the course of the trial and had no opportunity at that point to establish an adequate defense of alibi for a stated time.

It has been held where a defendant is not misled or prejudiced in making his defense by the allegation concerning the date of the crime charged, that date is unimportant, and a conviction may properly follow upon sufficient proof of the commission of the offense at any time within the provisions of the statute of limitations. (*State v. McCarthy*, 124 Kan. 20, 257 Pac. 925, Syl. ¶ 3.)

In *State v. Wagoner*, 128 Kan. 299, 278 Pac. 1, the complaint charged the defendant with the crime of statutory rape within two years past, which was said to be notice to him that any charge or act within the time limited might be introduced in evidence against him and that he might be tried for any act within that time. There the court required the state to elect which occurrence it would rely upon for a conviction. The state made the choice and a conviction was obtained on the charge.

In cases of this nature the crucial point is whether the defendant was in any way prejudiced because of the discrepancy in dates or the manner in which the appellant was charged in the information. (*State v. Robertson,* 190 Kan. 771, 378 P. 2d 37.)

Here the appellant on motion was granted a continuance from the June setting to the September term for a trial which commenced on October 15. After the amendment of the information the appellant had more than five months to prepare for trial, during which time he was adequately represented by counsel. Under the circumstances we cannot say the appellant was prejudiced by the allegation that the crime occurred within a seven day period. Here the appellant was charged with the offense which severely injured Starlette. This was made evident at the preliminary hearing. The subsequent filing of the information and its amendment did not change the specific act for which the appellant was charged. The discrepancy in dates was explained by the evidence at the trial. (See *State v. Robertson,* supra.)

Here the defendant in various ways objected to the indefinite period of time stated in the amended information, but the record does not disclose the defendant at any time invoked the provisions of K. S. A. 62-1341 to require the state to definitely state the time and place "in order to enable him to offer evidence in support of a contention that he was not present."

The appellant specifies the district court admitted into evidence testimony which was not competent or admissible and which was prejudicial to his rights.

The appellant first directs our attention to the testimony of Starlette.

K. S. A. 60-417 now governs the capacity of a witness to testify. This statute reads in pertinent part:

"A person is disqualified to be a witness if the judge finds that (*a*) the proposed witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him, or (*b*) the proposed witness is incapable of understanding the duty of a witness to tell the truth. . . ."

The rules of evidence in the new code were discussed in *State v. Poulos,* 196 Kan. 253, 411 P. 2d 694, cert. denied 385 U. S. 827, 17 L. Ed. 2d 64, 87 S. Ct. 63, wherein the provisions of K. S. A. 60-407 were said to be limited by 60-417, *supra.*

The appellant argues under the foregoing statute it is possible a witness might fully understand the nature of the oath and might be

competent to perceive and remember facts, but if he cannot adequately express himself concerning the matter about which he testifies, he should be disqualified under the provisions of 60-417, *supra*.

The trial court, after conducting a preliminary inquiry out of the jury's presence as to Starlette's capacity to testify, found she was capable of understanding the duties of a witness and the meaning of testifying to the truth as required by the oath. At the appellant's request Starlette was examined by a psychiatrist. He concluded "her effect in discussing the incident was appropriate to the circumstances and from the clinical examination we have no reason to suspect that Starlette is lying or making up the material she communicates."

While the appellant admits Starlette apparently understood the nature of the oath, he argues it was impossible to ascertain whether she could adequately express herself "concerning the matter" so as to be understood by the jury. It is said, only after she had testified before the jury could it be determined whether she could adequately express herself as required by the statute.

The appellant contends at no time could it be said that Starlette "expressed herself" concerning the matter. In this connection, it is argued, she was examined by leading questions which brought about only the response of "yes" or "no" concerning critical elements of the crime.

The general rule concerning the testimony of young children was reviewed in *State v. Gaunt*, 98 Kan. 186, 190, 157 Pac. 447, where the court upheld the trial court's decision to allow a five year old to testify. There it was held the question of whether a person of tender years is competent to testify is a question to be determined by the trial court.

Whether leading questions should be permitted in any particular case rests in a large measure in the discretion of the trial court. Unless it appears that there has been an abuse in the exercise of this power of discretion, a judgment based on such evidence will not be disturbed. (*State v. Rowland*, 176 Kan. 203, 204, 270 P. 2d 211.)

The appellant concedes that the capacity of a witness to testify is ordinarily left to the discretion of the trial judge, but he contends in the present case the record reflects an abuse of that discretion.

The appellant also concedes the court has on numerous occasions permitted what is commonly referred to as "leading questions,"

particularly when the witness is a child of tender years, but argues the questions in the instant case were not designed to simply assist the witness, but were suggestive and presented in such a manner as to elicit a particular desired answer.

Without unduly burdening this opinion, we have carefully reviewed the testimony of Starlette and conclude the trial court did not abuse the exercise of its power of discretion in permitting Starlette to testify, or in permitting counsel for the state to examine her with leading questions. The appellant was permitted and did cross-examine Starlette in considerable detail in the same way counsel for the state examined her. The record indicates she was capable of expressing herself in language suitable to her age. The credibility of Starlette's testimony and its weight were questions to be determined by the jury. (*State v. Gaunt*, supra.)

The appellant further contends portions of the testimony of Mrs. Thompson were not proper and were wrongfully admitted.

Over the appellant's objection Mrs. Thompson testified as to a conversation she had with Starlette at the hospital on the 17th day of April, as heretofore related.

In 1964 Kansas adopted the code of civil procedure which included "Article 4.—Rules of Evidence." K. S. A. 60-402 states the scope of the rules as follows:

"Except to the extent to which they may be relaxed by other procedural rule or statute applicable to the specific situation, the rules set forth in this article shall apply in every proceeding, both criminal and civil, conducted by or under the supervision of a court, in which evidence is produced."

Thus, the rules of evidence have been codified and govern in all cases notwithstanding the prior case law which might be inconsistent with the statute.

K. S. A. 60-460 deals with hearsay testimony and states in part:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

"(*a*) *Previous statements of persons present.* A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness:

. . . . . . . . . . . . .

"(*d*) *Contemporaneous statements and statements admissible on ground of necessity generally.* A statement (1) which the judge finds was made while the declarant was perceiving the event or condition which the statement narrates, describes or explains, or (2) which the judge finds was made

while the declarant was under the stress of a nervous excitement caused by such perception, . . ."

The testimony of Mrs. Thompson concerning her conversation with Starlette was clearly hearsay evidence. The only question, therefore, is whether it is admissible as an exception to the hearsay rule. The two possibilities that exist are indicated by subparagraphs (a) and (d) above. It could hardly be said the statements made by Starlette to her grandmother were "contemporaneous statements" under exception (d). This would include statements which were made so closely connected with the time and place of the crime as to be a part of the *res gestae*. (For a discussion of this matter see *State v. Langston,* 106 Kan. 672, 189 Pac. 153, where a child of tender years was assaulted and made complaint to her mother shortly after the occurrence.)

In the instant case the alleged conversation between Starlette and her grandmother took place approximately ten days after the event.

The grandmother's testimony relative to the conversation she had with Starlette is admissible, however, under subparagraph (a) as an exception to the hearsay rule. The statement was previously made by Starlette, who was present at the hearing in the courtroom and available for cross-examination with respect to the statement and its subject matter. The statement was made by the grandmother under oath in open court and would have been admissible had Starlette been testifying as a witness.

The appellant contends the critical element of this exception is not the physical presence of the declarant, Starlette, but her availability for cross-examination. Thus, it is argued, we are back to the original problem of Starlette's capacity as a witness.

In view of our previous holding that the trial court did not err in finding Starlette was competent to testify as a witness, we find no merit to this point asserted by the appellant. Starlette was available and was cross-examined by the appellant on matters concerning which the appellant desired to cross-examine her.

The appellant next specifies the evidence submitted to the jury was insufficient to establish the elements of the alleged offense, and did not establish the elements set forth in the instructions. Therefore, the verdict of the jury was contrary to law and the evidence, and was not supported by competent and sufficient evidence.

The jury was instructed by instruction No. 4 as follows:

"Before the defendant can be convicted of the crime of statutory rape, as

charged in the Information, the State must prove to your satisfaction and beyond a reasonable doubt each and all of the following elements of such crime, to-wit:

"1. That the defendant, Gene Jones had sexual intercourse with the said Starlette Armentrout.

"2. That the said Starlette Armentrout at said time was a female person under the age of eighteen years.

"3. That the act complained of occurred in Ford County, Kansas, and on or about or between the 6th day of April, 1968, and the 12th day of April, 1968.

"If the State has proved to your satisfaction beyond a reasonable doubt each and all of the above essential elements then you should return a verdict finding the defendant guilty as charged in the Information, but if the State has not so proved or if the evidence in the case leaves in your minds a reasonable doubt as to any of said essential elements, then you should return a verdict finding the defendant not guilty."

Cases upon which the appellant relies in reviewing the sufficiency of the evidence are *State v. Doyle*, 201 Kan. 469, 441 P. 2d 846; and *State v. Wheaton*, 149 Kan. 802, 89 P. 2d 871, the latter case involving statutory rape.

The first element argued by the appellant is that there was no actual penetration into the body of the female by the sexual organ of the male to complete the act of sexual intercourse, as defined by the court in its instruction.

The thrust of the appellant's argument on this point is that at no time did Starlette make any complaint of the alleged conduct to her mother, who would be the natural object of her confidence, nor did she make complaint to her teacher in school, who testified for the appellant. In this connection it is to be noted Starlette attended school the 9th, 10th, 11th and 12th of April, 1968, and was observed by her teacher who testified that the child exhibited no indication that she had any pain. The appellant also relies on the fact that none of the normal tests were conducted by the doctor to determine if the child had experienced actual intercourse.

The appellant relies on the quotation from 52 C. J., Rape, § 118, p. 1087, in *State v. Wheaton*, supra.

In view of Starlette's testimony that she promised her daddy she would not tell, and the nature of her mother's testimony, the appellant's argument concerning lack of immediate complaint on the part of Starlette loses its significance.

Viewing the evidence of Starlette and the doctor who treated her in the light most favorable to the state, we think this point requires no further consideration. The jury was warranted in finding from

the evidence the act of sexual intercourse actually took place between the appellant and Starlette.

The record of Starlette's testimony before us reveals a description of the incident in a style and manner appropriate to a seven year old child. When she expressed herself she did not use a sophisticated vocabulary, but this is not required or to be expected. She was capable of being understood by the jury and she was emphatic at times. Her simple explanations were appropriate.

The appellant does not challenge the age of the child but proceeds to reassert his argument that the evidence does not disclose beyond a reasonable doubt the "act" occurred in Ford County, Kansas, "on or about or between the 6th day of April, 1968, and the 12th day of April, 1968."

Mrs. Thompson, the child's grandmother, testified when Starlette missed school on Monday, April 8, 1968, "she was bleeding some and didn't feel good." There was testimony from Mrs. Thompson and another witness that Starlette's mother said Starlette had passed a large clot of blood five or six inches long while in the bathroom immediately before she took her to the Greensburg hospital. This was denied by Starlette's mother when she testified for the appellant, but tends to confirm Starlette's testimony that the offense occurred after attending the movies "Saturday, Sunday" night, which would be the 6th or 7th of April, 1968, and the explanation of the doctor that it was possible the injury was inflicted five or six days prior to his examination of Starlette.

The elements of time and place in other respects have previously been discussed and merit no further attention.

We hold the evidence presented by the record is sufficient to uphold the establishment of each and every element of the crime charged, and to uphold the verdict of the jury.

The appellant specifies the district court was guilty of misconduct in the presence of the jury, which was prejudicial to his rights.

In trying this matter the trial judge administered the oath to Starlette himself prior to her testimony, whereas the clerk of the court administered the oath to each of the other witnesses who testified in the case. Prior to administering the oath to Starlette the trial judge in the presence of the jury addressed Starlette as follows:

"We have explained to you the meaning of an oath. At this time I am going to give the oath to you and ask you to answer yes or no as you will to the question asked. . . ."

The appellant argues Starlette should have been treated as any other witness. The appellant says, "It was almost as if the court was reassuring the jury that this witness knew and understood the oath and was going to testify in a truthful manner."

Instruction No. 9 given by the trial court pertained to the credibility of witnesses and the weight to be attached to the testimony of each and all of them.

The appellant after referring to instruction No. 9 queries:

"Was the testimony of Starlette subject to the same tests of credibility by the jury as that of other witnesses, pursuant to the instruction? Or did the jury simply assume that the question of credibility of this particular witness was removed by the fact that the judge administered the oath and commented upon her understanding of the same? Defendant contends that the procedure followed with reference to Starlette and the comments so made, removed from the jury's consideration an aspect of the case which is solely within the integrity of the jury, that of credibility of testimony."

The fact that Starlette was a very reluctant witness presented constant problems to the prosecuting attorney, defense counsel and the judge during the course of the trial.

The appellant contends the court again violated the principles of proper conduct in an effort to encourage Starlette to testify. In this connection Starlette testified and the court responded as follows:

"Q. You absolutely won't tell what hurt you?
"A. I can't.
"Q. Could you tell me why you can't? Can you tell me?
"The Court: Starlette, just go ahead and tell what you have told others before what happened, if it is the truth."

Appellant's counsel immediately objected to such procedure on the ground it was immaterial what the witness had told others in the past, and also that the statement strongly implied that the judge had heard the story before and believed it to be true, and now was anxious that the jury hear the same story.

Thereafter Starlette testified she was frightened with all the people standing or sitting in the courtroom, and the state's attorney requested the court to reassure the witness, and the court said:

"The only thing we want to know is what happened, and nobody is going to harm you or abuse you or spank you or anything like that. You must recognize that you are a mighty nice little girl and sometimes these things have to be told, and we want you to tell just what happened.

"Your going to the hospital and the whole story has to come out, why

you went to the hospital and what happened and if you will tell us that that is what we want.

"Will you do that?"

A little later the trial judge again addressed Starlette while she was on the witness stand as follows:

"All of these people have children or have children around them and they have to talk over their matters of the children's problems and they understand, Starlette, and knowing that you have a problem here and they are all understanding of it but it is one of these things that happens in the courtroom that these things have to come out and be told. And if you will just start out and tell us. Lean forward there on the bench and tell us what happened."

The purpose of a trial in a criminal case is to ascertain the truth of the matters charged against the defendant, and it is a part of the duty of the trial judge to see that this end is attained, even though in accomplishing the full development of the truth it sometimes becomes necessary for him to examine and cross-examine the witnesses. Where the trial judge deems it necessary to examine the witnesses he must exercise great care to prevent giving the jury the impression that he is biased against the defendant, and he must not forget the function of a judge and assume that of an advocate. The same rule applies with respect to the credibility of a witness, and a judge should exercise great care and caution to say nothing within the hearing of the jury which would give them an indication of what he thought about the truth or falsity of any part of the testimony. The credibility of a witness is a matter to be determined by the jury. (*State v. Winchester,* 166 Kan. 512, 203 P. 2d 229; and see *State v. Marek,* 129 Kan. 830, 284 Pac. 424; and *State v. Johnson,* 201 Kan. 126, 439 P. 2d 86.)

The appellant contends, in essence, the foregoing conduct of the trial judge amounted to the judge becoming an advocate of the prosecution and that the statements and comments made by the judge affected the minds of the jury with reference to the credibility of Starlette. It is, therefore, contended the appellant's rights were prejudiced and that he should be awarded a new trial as a result of such conduct.

It must be fully realized cases of this nature, involving a seven year old child as the principal witness, are extremely difficult to try, particularly where the child is reluctant to testify as Starlette was in this case.

In the trial of this case Starlette was confronted with the formidable atmosphere of a courtroom packed with spectators and others.

She was naturally shy and awed by the court proceedings. The trial judge was obviously attempting to put the child at ease by administering the oath himself. He had previously conducted the preliminary examination of the child concerning her capacity to testify as a witness, and undoubtedly felt he had made some progress in gaining her confidence. The trial judge can administer the oath to a witness as readily as any other authorized officer of the court, and no prejudice results from such procedure, nor does it add extra credence to the testimony of such witness.

Upon examination of the entire testimony of Starlette in the record, nowhere did the trial court comment on the evidence; he did not comment on the witness' credibility; and he did not comment on the weight of the evidence. Furthermore, he did not conduct the examination of Starlette as a witness beyond his attempts to encourage her to answer. He was interested in attempting to ascertain the truth in the case.

Viewed in isolation, the trial judge may have worded some of his statements more carefully, but his remarks were entirely appropriate for those of an adult conversing with a child of tender years, who was somewhat reluctant to testify.

The jury was properly instructed concerning the credibility of the witnesses and the weight to be given their testimony. On the record presented it must be assumed the jury followed the court's instructions. The queries of the appellant and his assertions fall in the realm of speculation and conjecture. We cannot say upon review of the entire record of Starlette's testimony the appellant's rights were prejudiced by the conduct of the trial court in its efforts to encourage her to testify.

Having thoroughly reviewed the record and the various contentions asserted by the appellant, we hold the appellant has failed to make it affirmatively appear the trial court committed reversible error as to any of the points asserted on appeal.

The judgment of the lower court is affirmed.