No. 55,423

STATE OF KANSAS, *Appellee,* v. RICHARD D. THRASHER, SR.,
*Appellant.*

(666 P.2d 722)

Opinion filed July 15, 1983.

*Camilla Klein Haviland,* of Dodge City, argued the cause and was on the brief for the appellant.

*Daniel L. Love,* county attorney, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal from a conviction for second degree murder. On February 2, 1982, Marsha Thrasher left for her job at a local restaurant at approximately 4:15 p.m. Her husband, Richard Thrasher, Sr., remained at home with the three children, Gregory Martin, age 4, William Martin, age 2, and Richard Thrasher II, 5 months. While Marsha was at work, Richard called at approximately 5:30 p.m., 8:00 p.m. and 10:30 p.m. During these calls Richard sought assurance that Marsha still loved him. During the final call he told her they might have to make a trip to Montana.

Marsha left for home shortly after the 10:30 call. As she arrived her husband came outside and wanted to sit in the pickup and talk. Eventually they went inside and Richard, after asking Marsha again whether she loved him, told her that he had

something to tell her and she wouldn't love him anymore. Thrasher stalled awhile longer, then told his wife their baby, Richard II, was dead. He explained the baby had fallen in the toilet earlier in the evening. Marsha wanted to call the police but Thrasher threatened to kill her and the other children if she did. Marsha then waited until Thrasher went to sleep at which time she went to a neighbor's house and called the police. The police came and found the dead child in its crib with a pillow over its head. Thrasher was taken into custody for questioning. At this time he told officers he had gone to the front porch with the baby in his arms, slipped on the snow and fell on the baby, killing it.

An autopsy was performed on Richard Thrasher II. Cause of death was listed as asphyxiation. During the autopsy the pathologist also found evidence of numerous bumps and bruises, including a subdural hematoma approximately one month old. He stated the child's death was not likely to have been caused in the manner suggested by Mr. Thrasher, but that it could have been the result of drowning or smothering.

Richard Thrasher was charged with murder in the first degree. K.S.A. 21-3401. After a jury trial he was convicted of second degree murder. K.S.A. 21-3402. He appeals.

The first issue on appeal concerns the propriety of allowing Marsha Thrasher's four-year-old son, Gregory Martin, to testify.

When the prosecution called Gregory Martin to testify, defense counsel challenged the competency of the witness. Subsequently the trial court conducted a hearing outside the presence of the jury to determine Gregory's competency. Based on Gregory's actions at this initial hearing the court decided not to let him testify, stating Gregory was "unable to listen to the questions and respond  .  .  .  ."

Later the prosecution requested the trial court again talk to Gregory to determine whether he had "calmed down" and could testify. The court agreed and this time Gregory was more attentive and responsive to the court's questions. The trial court then changed its mind and decided to allow Gregory to testify.

On the stand Gregory was no model of clarity. He did, however, give testimony damaging to the appellant. When asked who killed "baby Richard," he replied "Richard" (meaning the appellant). He also related that Thrasher "hollered" at the baby, telling him to "shut up" and "suck the bottle." He then stated he

saw the appellant choke the baby and flush him down the toilet.

Two Kansas statutes are relevant to this question. First, K.S.A. 60-407 provides in pertinent part:

"Except as otherwise provided by statute (a) every person is qualified to be a witness, and . . . . (c) no person is disqualified to testify to any matter . . . ."

### K.S.A. 60-417 discusses disqualification of witnesses:

"A person is disqualified to be a witness if the judge finds that (a) the proposed witness is incapable of expressing himself or herself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him or her, or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth. An interpreter is subject to all the provisions of this article relating to witnesses."

Kansas law does not disqualify a witness simply because of age.

Under K.S.A. 60-407 a witness, no matter how young, is presumed competent to testify. The burden of establishing incompetency rests on the challenger. *State v. Poulos*, 196 Kan. 253, 263, 411 P.2d 694, *cert. denied* 385 U.S. 827 (1966). K.S.A. 60-417, in turn, directs to the discretion of the trial court the disqualification of a witness for any of the enumerated reasons. *State v. DeLespine*, 201 Kan. 348, 351, 440 P.2d 572 (1968). See also *State v. Jones*, 204 Kan. 719, 727-28, 466 P.2d 283 (1970); *State v. Whiting*, 173 Kan. 711, 713, 252 P.2d 884 (1953); *State v. Gaunt*, 98 Kan. 186, 157 Pac. 447 (1916). Thus, in order for a witness to be disqualified, the trial court must be convinced the witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury, or is incapable of understanding the duty of a witness to tell the truth. *State v. Poulos*, 196 Kan. at 264.

Gregory Martin's inattentiveness at the initial competency hearing was apparently caused by the appearance of the appellant, whom the little boy had not seen for some time. (There was evidence Thrasher had abused Gregory approximately two years earlier.) At the second hearing and at trial, however, Gregory indicated he was aware of his duty to tell the truth by stating that if he didn't he would get in trouble. The question of whether Gregory was capable of expressing himself so as to be understood by the judge and jury is not so clear. For example, in response to a question regarding how the baby died, Gregory

responded "He got dead with a kill." At other times, however, Gregory clearly expressed himself, stating exactly what he heard Thrasher say and what he saw him do. Indeed, he generally expressed himself in language suitable to his age. *State v. Jones,* 204 Kan. at 728. We hold the trial court did not abuse its discretion.

Appellant also argues the allowance of testimony by Gregory Martin effectively denied him his right to confrontation guaranteed by the Sixth Amendment of the United States Constitution. No cases are cited to support this proposition. His theory is that Gregory was so unresponsive to defense counsel's questions on cross-examination there was inadequate confrontation.

It is well settled the right of confrontation is satisfied when the defendant has had an opportunity to cross-examine the witnesses against him. *State v. Busse,* 231 Kan. 108, 111, 642 P.2d 972 (1982). It is clear defense counsel had the opportunity to thoroughly cross-examine Gregory Martin, which she did quite well. At times she was able to get him to answer her questions to her satisfaction. Other times, however, he was unresponsive or implicated the appellant. We hold the appellant was not denied his Sixth Amendment right to confront the witnesses against him.

The judgment of the trial court is affirmed.

MILLER and HOLMES, JJ., dissenting.