**STATE of Utah, Plaintiff and Appellee,**

v.

**Louis Fred IRELAND, Defendant and Appellant.**

No. 870225.

Supreme Court of Utah.

May 11, 1989.

Nathan Hult, Logan, for defendant and appellant.

R. Paul Van Dam, Kimberly K. Hornak, Salt Lake City, for plaintiff and appellee.

DURHAM, Justice:

Defendant Louis Fred Ireland was convicted of sodomy on a child, a first degree felony. On appeal, he claims (1) that the prosecutor committed reversible error by using leading questions, (2) that statements made by a witness were hearsay and were improperly admitted at trial, (3) that testimony concerning a conversation between defendant's ex-wife and defendant was improperly excluded at trial, (4) that there is insufficient evidence to sustain the verdict because of an improperly amended information, and (5) that a jury instruction on reasonable doubt was improperly worded. We affirm defendant's conviction.

During the summer of 1986, when the abuse occurred, the victim, defendant's eleven-year-old son, lived with defendant and the victim's sister in Smithfield, Utah. Defendant and the victim's mother had been divorced for several years, and he had custody of the children. At the beginning of August, the two children went to Idaho Falls, Idaho, for a two-week visit with their mother. At the end of the visitation period, the mother failed to return the children to defendant, and he contacted the Idaho Falls and Cache County Utah police departments. He was informed by the Cache County Sheriff that sexual abuse charges were pending against him.

While the children were visiting their mother, the victim revealed to a social worker, Robin Pelham, that his father had sexually abused him in early August before he left for Idaho. At trial, the victim testified that defendant had entered the victim's bedroom in the evening, asked the victim to pull his underwear down, and then fondled the victim's penis for approximately five minutes. Defendant then put his mouth over the victim's penis for about three minutes. The victim testified that defendant then left the room to watch television.[1]

Defendant attempted to establish that the victim was capable of lying if he felt that it would get him what he wanted and that the victim's mother had initiated the accusations in order to gain custody of the two children.

Defendant was convicted of sodomy on a child pursuant to Utah Code Ann. § 76-5-403.1 (Supp.1987) and sentenced to five years to life, with a minimum mandatory term of ten years.

*Leading Questions*

We first address defendant's contention that the prosecutor's use of leading ques-

---

1. On cross-examination, defense counsel established that the victim's testimony at the trial concerning the event differed in some aspects from that given to Ms. Pelham and at the preliminary hearing.

tions in eliciting the victim's testimony was error. Rule 611 of the Rules of Evidence states in part:

(a) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

. . . .

(c) Leading questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

Utah R.Evid. 611(a), (c). The advisory committee note to this rule states, "This rule is the federal rule, verbatim, and restates the inherent power of the court to control the judicial process."

■ The allowance or exclusion of leading questions is within the discretion of the trial court. A ruling on the use of leading questions will therefore be overruled only if the trial court has abused its discretion. Leading questions have been allowed by many courts when attempting to elicit testimony from children. *See, e.g., United States v. Littlewind,* 551 F.2d 244 (8th Cir.1977); *State v. Jones,* 204 Kan. 719, 466 P.2d 283 (1970); *Barcus v. State,* 92 Nev. 289, 550 P.2d 411 (1976); *see also McCormick on Evidence* ch. 2, § 6, at 13 (3d ed. 1984).

We recognize that the use of leading questions with children may create a greater danger of eliciting the answer suggested by the question. However, we believe that with a child witness who is testifying about a sensitive subject, leading questions may more often be necessary "to develop [the child's] testimony" than with adult witnesses. *See* Utah R.Evid. 611(c).

■ We do not believe that the trial court abused its discretion when it allowed the prosecutor to use leading questions with the victim. The victim, although speaking very softly, had very little difficulty testifying until the prosecutor asked him to describe what defendant had asked him to do after defendant entered his bedroom. After trying to elicit the information from the victim using several different approaches, the court interjected, "You can liberally use leading questions if you wish." The prosecutor then carefully used leading questions to get the victim to discuss the events leading up to the act of abuse. When the prosecutor reached another impasse with the victim, the court again stated, "You can use leading questions or proceed as to what happened as opposed to conversations." The prosecutor then used leading questions combined with the victim's use of anatomically correct dolls to elicit what had occurred. In response to an objection from defendant's counsel, the court stated, "Well, I understand they're leading, but I also understand that in view of the witness's age and also the difficulty that he's obviously showing and exhibiting and testifying, I feel that leading questions are appropriate as long as it's not carried too far."

In light of the victim's use of dolls to demonstrate that defendant had sodomized him, the prosecutor's careful use of leading questions, and the trial court's considered opinion that leading questions were necessary to develop the victim's testimony, we do not believe that the allowance of leading questions was error. Nor does the trial court's suggesting that leading questions be used demonstrate an abuse of the court's discretion.

### Hearsay Testimony

■ Defendant makes two assertions of error concerning rulings the trial court made on the admissibility of hearsay evidence. First, he challenges the court's allowance of Pelham's testimony that the victim had told her that "it [the abuse] first

started happening when I was five." Defendant claims that this statement is not admissible because it does not come within an exception to the hearsay rule. The State supports the admission of the statement on the ground that either it was not a hearsay statement or it was admissible under rule 803(4) or Utah Code Ann. § 76–5–411 (Supp.1987).

The challenged statement was offered by Pelham on cross-examination by the State. Defendant's counsel called Pelham as a witness in an effort to discredit the victim's earlier testimony. Defense counsel asked her, "On that occasion that you talked with him is it not true that [the victim] told you on that occasion that his father never had any oral contact with his genitals in Utah?" Pelham answered, "He said—at one point he did say that; he also said that he had. He told me both ways, so it was kind of confusing." In order to clarify both Pelham's and the victim's testimony, the State questioned Pelham about several claims of abuse made by the victim against defendant. After answering that the victim claimed to have been abused by his father at several locations, Pelham was asked "how far back" the claims went. It was to this question that defendant objected. The court allowed an answer, agreeing with the State that the statement was a basis of Pelham's investigation. Pelham answered, "He told me that he first—that 'it first started happening when I was five.'"

We agree with the trial court that the statement was properly admitted. Defendant's counsel introduced Pelham's testimony on direct examination in order to discredit the victim. We do not believe that defendant can offer this type of testimony and then complain when the State attempts to clarify a seeming inconsistency on cross-examination. By questioning Pelham on direct examination about the victim's statements to her, defendant has waived his right to complain that Pelham's rehabilitation of the victim was improper. *Cf. Trouser Corp. of America v. Goodman & Theise, Inc.,* 153 F.2d 284, 288 n. 6 (3d

Cir.1946) ("Where the objection is ... to the substance or subject-matter, the objecting party may also waive objection by himself introducing evidence of the facts objected to....").

■ Next, defendant challenges the trial court's exclusion of defendant's testimony about a conversation he had with his ex-wife concerning custody of the children. Defendant claims that the testimony should have been allowed pursuant to rule 803(3), which permits a statement concerning the declarant's state of mind, emotion, sensation, or physical condition to be excepted from the rule prohibiting hearsay, rule 802.

Although defendant had the right to use his ex-wife's statement regarding her state of mind to establish a motive to induce the child to lie about the abuse because of the custody dispute, defendant was not in fact attempting to use the statement for that purpose. The basis of the trial court's ruling on this evidentiary question is not altogether clear. It appears, however, that the trial judge understood that the evidence tended to show that the declarant had a motive for influencing the victim, but ruled that the evidence was inadmissible because counsel admitted that the defense was not attempting to show that she did try to influence the victim's testimony. For that reason, we do not believe the trial court erred in its ruling.

*Amended Information and Sufficiency of Evidence*

■ Defendant claims that the evidence introduced at trial was insufficient to support the verdict because the information was incorrectly amended. Defendant's argument on this point is rather confused. At trial, the prosecutor moved to amend the information. The information originally read that defendant had "engaged in a sexual act upon a child under the age of 14 involving the genitals of the actor and the mouth of the child." The prosecutor, after opening statements but before trial testimony, moved to amend the information by

adding "or involving the genitals of the child and the mouth of the actor." However, the information was mistakenly amended to read "or involving the genitals of the child and the mouth of the child." Defendant claims that this mistake resulted in insufficient evidence to prove the offense as alleged. We disagree.

At trial, the following exchange took place:

Mr. Jenkins: Your Honor; with regard to the information, from my own oversight I guess if nothing else, Nathan was reading from the information when he made his opening statement, and it occurred to me that it appears that the wording with regard to the specific act of sodomy is in reverse to what we are alleging. It says that the child placed his mouth on the genitals of the father.

The Court: Uh-huh.

Mr. Jenkins: At the preliminary hearing, both on direct and cross examination, the boy testified the other way around, and we've always maintained that what we're talking about is the father placing his mouth on the genitals of the child. It's still sodomy, one way or the other.

I would move to amend the information to at least allege in the alternative, leave it the way it is and say, "or involving the genitals of the child and the mouth of the actor."

The court allowed the prosecutor to write the amendment on the information. Defendant's counsel objected to the amendment, stating, "I guess we object at this late state just because we were prepared to face that particular allegation."

Defendant does not renew the claim of surprise on appeal, although this was his only objection to the amendment at trial. In the absence of other objections, defendant cannot claim on appeal that the trial court erred by allowing the amendment.

We do not believe that in this case the incorrectness of the amendment is cause to reverse defendant's conviction. Although the information was amended in error by the prosecutor, defendant was not prejudiced by the mistake. The discussion at trial demonstrates that defendant's counsel understood how the information was to be amended, and throughout the trial, all parties acted as though the information had been amended correctly. Moreover, the incorrect amendment appears on the statement of facts on page two of the information which detail the charge. *See* Utah R.Crim.P. 4(b). The charge of sodomy on a child was correctly written and not changed by the amendment.

This Court will overturn a jury verdict "only when the evidence is so lacking and insubstantial that a reasonable person could not have reached that verdict beyond a reasonable doubt." *State v. Dumas,* 721 P.2d 502, 504 (Utah 1986) (quoting *State v. Isaacson,* 704 P.2d 555, 557 (Utah 1985)). We do not believe that this standard has been met. Although the victim's testimony at trial was inconsistent in some aspects with his testimony at the preliminary hearing, the jury chose to believe the victim's account of events over defendant's. Such a choice between conflicting testimony is within the province of the jury. *State v. Gentry,* 747 P.2d 1032, 1039 (Utah 1987). The incorrectly amended information does not undermine the sufficiency of the evidence to support the sodomy conviction.

*Jury Instruction*

■ Lastly, defendant claims that the jury instruction defining "reasonable doubt" improperly placed emphasis on conviction rather than on acquittal. The instruction stated:

A reasonable doubt is one based on reason. It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt.

Doubt to be reasonable must be actual and substantial, not mere possibility or speculation.

In *State v. Tillman,* 750 P.2d 546 (1987), this Court addressed a similar claim of error. In *Tillman,* the instruction read:

*Now, by reasonable doubt is meant a doubt that is based on reason and one which is reasonable in view of all the evidence. Proof beyond a reasonable doubt is that degree of proof which satisfies the mind and convinces the understanding of those who are bound to act conscientiously upon it. A reasonable doubt is a doubt which reasonable men and women would entertain, and it must arise from the evidence or the lack of the evidence in this case.*

If after an impartial consideration and comparison of all the evidence in the case you can candidly say that you are not satisfied of the defendant's guilt, you have a reasonable doubt. *But if after such impartial consideration and comparison of all the evidence you can truthfully say that you have an abiding conviction of the defendant's guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt. A reasonable doubt must be a real, substantial doubt and not one that is merely possible or imaginary.*

*Id.* at 571–72 (emphasis added). In *Tillman,* we did not believe that the language "in any way alter[ed] the State's burden of proof or shift[ed] it to defendant," and thus we upheld the instruction. *Id.* at 572. Although arranged and worded slightly differently, the instructions frame the definition of "reasonable doubt" in an almost identical manner. This similarity necessitates holding that the reasonable doubt instruction did not deny defendant due process.

We note that this instruction was preceded by two others dealing with the prosecution's burden of proof. One of them told the jury that "[t]he burden rests upon the prosecution to establish every element of the crime with which the Defendant is charged, and every element of the crime must be established beyond a reasonable doubt." The other instructed them that "a Defendant in a criminal action is presumed to be innocent until the contrary be proved; and in case of a reasonable doubt whether his guilt be satisfactorily shown, he is entitled to be acquitted." In light of the unequivocal language of these instructions, we do not think the dissent's concerns about the burden of proof are well founded.

We do acknowledge, however, that the dissent's criticisms of the "more weighty affairs of life" language is justified and share Justice Stewart's concern that the "possible or imaginary" language might, by implication, be understood to diminish the prosecution's standard of proof. Therefore, in our supervisory capacity, we direct the trial courts to discontinue use of that language in their instructions on the definition of reasonable doubt.

We affirm defendant's conviction.

HOWE, Associate C.J., and ZIMMERMAN, J., concur.

HALL, C.J., concurs in the result.

STEWART, Justice (dissenting):

I dissent because I believe that the instruction defining proof beyond a reasonable doubt was erroneous.

In defining reasonable doubt, the trial court gave the following instruction:

A reasonable doubt is one based on reason. It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual and substantial, not mere possibility or speculation.

There are several problems with this instruction. First, it implies that a defendant should be convicted if there is "an abiding conviction of the truth of the charge...." That is not the law. A defendant should be convicted only if guilt is shown *beyond* a reasonable doubt, and the instruction should specifically state that the State's proof must obviate all reasonable doubt. This instruction in effect states that if the jury has an abiding conviction of guilt, then it follows that it does not have a reasonable doubt. I submit that that misstates the law.

Second, it is not proper to instruct a jury that a reasonable doubt is one which "would govern or control a person in the more weighty affairs of life." Nothing that one ordinarily does in the course of a normal life span is comparable to the decision to deprive another of either his or her life or liberty by voting to convict for a crime. *See Scurry v. United States*, 347 F.2d 468 (D.C.Cir.1965), *cert. denied*, 389 U.S. 883, 88 S.Ct. 139, 19 L.Ed.2d 179 (1967). Profound differences exist between decisions to convict another person and decisions to enter into marriage, buy a home, invest money, have a child, or have a medical operation—or whatever else might be deemed a weighty affair of life.

The mental process employed in deciding that someone has committed a crime beyond a reasonable doubt is different from the mental process employed in making decisions in the "more weighty affairs of life." In making the latter type decision, a person looks forward and makes a decision about future conduct. A degree of risk is always inherent in such a decision, and usually the degree of risk based on doubt about future events is significant. The process employed in making such decisions is only partly a matter of assessment of past facts; instead, the decision often rests on a degree of hope, determination, and frequently, personal resolve. In most cases, the decision is revocable, but whether or not revocable, it is at least salvageable.

A decision to convict always looks backward; it is concerned only about resolving conflicting versions of factual propositions about a past event. It is always irrevocable as to the jurors. The process does not involve the decision maker's hope, determination, or willingness to undertake a personal risk. Rather, such a decision demands reason, impartiality, and common sense. A jury must have a greater assurance of the correctness of its decision, if it is to comply with the constitutional mandate, than the individual jurors are likely to have in making the "weighty" decisions they confront in their own lives.

A number of courts have criticized the definition of the reasonable doubt standard expressed in terms of making important or "weighty" decisions in the jurors' own lives.[1] An instruction that does that tends to diminish and trivialize the constitutionally required burden-of-proof standard. *See Dunn v. Perrin*, 570 F.2d 21 (1st Cir.), *cert. denied*, 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978). In *Scurry*, 347 F.2d at 470, Judge Skelly Wright stated:

> A prudent person called upon to act in an important business or family matter would certainly gravely weigh the often neatly balanced considerations and risks tending in both directions. But, in making and acting on a judgment after so doing, such a person would not necessarily be convinced beyond a reasonable doubt that he made the right judgment. Human experience, unfortunately, is to the contrary.

The Supreme Judicial Court of Massachusetts in *Commonwealth v. Ferreira*, 373 Mass. 116, 130, 364 N.E.2d 1264, 1273 (1977), stated:

---

1. By contrast, instructions stating that a doubt which would cause a person to hesitate to act have received approval. *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954); *Dunn v. Perrin*, 570 F.2d 21, 24–25 (1st. Cir.), *cert. denied*, 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978); *United States v. Robinson*, 546 F.2d 309, 313 (9th Cir. 1976), *cert. denied*, 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 597 (1977).

The degree of certainty required to convict is unique to the criminal law. We do not think that people customarily make private decisions according to this standard nor may it even be possible to do so. Indeed, we suspect that were this standard mandatory in private affairs the result would be massive inertia. Individuals may often have the luxury of undoing private mistakes; a verdict of guilty is frequently irrevocable.

(Footnotes omitted.)

Finally, I submit that it is inappropriate to instruct that a reasonable doubt is not merely a possibility, as the instruction in this case does. Possibilities may or may not create doubt. Depending on the circumstances, a possibility may constitute a reasonable doubt. Whether a possibility is sufficient to create a reasonable doubt depends upon the likelihood of the possibility. Certainly a fanciful or wholly speculative possibility ought not to defeat proof beyond a reasonable doubt. But the instruction does not make the point clear.

An instruction that a reasonable doubt must be a "real, substantial doubt, and not one that is merely possible or imaginary" has been held to be erroneous because, in practical effect, it tends to diminish the prosecution's burden of proof by implying that the prosecution need not obviate a real or substantial doubt. *See, e.g., Dunn v. Perrin; United States v. Flannery*, 451 F.2d 880, 882–83 (1st Cir.1971).

In my view, the trial court's instruction was clearly erroneous and ought to be so declared.