**STATE of Utah, Plaintiff and Respondent,**

v.

**Juan Jose LOPEZ, Jr., Defendant and Appellant.**

**No. 890324–CA.**

Court of Appeals of Utah.

March 2, 1990.

Lisa J. Remal, Candice A. Johnson, and Richard G. Uday, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Sandra L. Sjogren, Salt Lake City, for plaintiff and respondent.

Before BENCH, GARFF and LARSON,[1] JJ.

GARFF, Judge:

Appellant, Juan Jose Lopez, Jr., appeals his convictions of second degree murder and second degree felony child abuse. We affirm his convictions.

In October 1987, appellant moved into the apartment of Cindy Redfox Hernandez and her three children, Roberto, age 7; Amanda, age 3; and Lillian, age 1. Both appellant and Cindy abused alcohol and used and sold illegal drugs.

On March 1, 1988, Cindy, after returning home and eating dinner with the family in the late afternoon, left to do errands while appellant and the children remained at the apartment. About 6:00 p.m., Cindy telephoned home and spoke with Roberto. She told him that she was at a store but, because he heard loud music and laughter in the background, Roberto did not believe her. He told appellant that Cindy was not coming home and was at a bar. Several hours later, Amanda began asking for her mother. Appellant left to look for Cindy, leaving the children home alone.

Appellant found Cindy at the Annex Bar, where she was drinking with friends, and

---

1. John Farr Larson, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(10) (Supp.1989).

told her that the children wanted her at home. Cindy became angry, telling him to get away from her and that she was not coming home. Angry, appellant began drinking beer and tequila and using cocaine and marijuana. While drinking, appellant saw Cindy and a woman enter the bathroom. Suspecting that Cindy was selling drugs, he confronted her. The two exchanged harsh words, and appellant struck Cindy.

Around 12:45 a.m., appellant returned to the apartment while Cindy remained at the bar. Appellant and Roberto watched television until two men and a woman arrived. They purchased drugs from appellant, went into the bathroom to use them, and stayed to talk with appellant.

Early in the morning, Cindy arrived home accompanied by a man, whom she introduced to appellant as her new boyfriend. Appellant refused to allow him to enter the apartment. Cindy became angry and ordered the visitors and appellant to leave the apartment immediately. Two of the visitors and the new boyfriend left. One visitor, Chito Velasquez, who died prior to this criminal proceeding, remained.

Appellant and Cindy began to argue vociferously. Cindy ordered appellant to leave immediately. Appellant refused. Cindy again ordered appellant to leave and threw a piece of pottery at him, smashing it against the wall.

Roberto testified that he saw appellant throw Cindy against the wall, go into the kitchen, and return with an eight inch knife, and that appellant pushed Cindy, raised the knife over his head, and then "made it go down fast" toward Cindy. Roberto heard Cindy scream. He went to his room and remained there until "it got quiet." Appellant stabbed Cindy several more times. She died within minutes.

Appellant testified that after Cindy threw the pottery at him he blacked out and next remembered seeing blood on his hands and on the knife that he was holding.

He then saw Cindy's dead body, which he pulled into the middle of the living room, tied her hands with a telephone cord, and covered her body with a blanket.

Roberto emerged from his room and opened the door to Cindy's bedroom. He saw appellant "digging in [his] mom's purse." Chito was standing in the room with appellant. Appellant told Roberto to go back to bed, but Roberto wanted to see if his mother was okay. Appellant told him that she was okay and was just sleeping, and again told Roberto to go back to bed. When Roberto observed blood on appellant's hands, appellant told Roberto that he had beaten up Chito. When Roberto again insisted on seeing Cindy, appellant told Roberto that if he told anyone what had happened he would kill him. Appellant then grabbed Roberto by the neck, choked him, wrapped a vacuum cleaner cord around his neck, and pulled it tight. Roberto fell to the floor, but, before he passed out, heard Chito tell appellant to "wash the knife off and put it where it was." Appellant testified that he did not remember harming Roberto, but also stated that he thought Roberto was dead when he left the apartment.

Appellant left, eventually going to Idaho, where he was arrested on March 14, 1988, and later extradited to Utah. When confronted by police, appellant told three different, contradictory stories as to what had happened. Appellant was charged, in the same information, with second degree murder, a first degree felony in violation of Utah Code Ann. § 76–5–203 (1986), and with child abuse, a second degree felony in violation of Utah Code Ann. § 76–5–109 (1985).

The state medical examiner determined that Cindy had died from at least six significant knife wounds, three of which could have caused her death. He observed severe petechial hemorrhaging over Roberto's face and in the whites of his eyes,[2]

**2.** Petechial hemorrhaging is a life-threatening injury which occurs when a long, thin ligature is placed tightly about a person's neck. High pressure arterial blood continues to pump into the head from the heart while blood is unable to leave the head through the veins because of the ligature. As the pressure builds, blood vessels burst, resulting in hemorrhaging in the skin and

consistent with having been strangled, and determined that Roberto had survived this life-threatening condition only because of the "resiliency of youth."

At the pretrial hearing, appellant's counsel moved to sever the murder and child abuse charges, alleging that the two offenses were not part of the same criminal act and that joinder would be prejudicial to appellant. The trial court denied appellant's motion.

A jury convicted appellant of the two charges. Appellant was sentenced to the Utah State Prison for consecutive terms of five years to life and one to fifteen years.

Appellant alleges that the trial court committed reversible error by (1) denying his motion to sever the charges, and (2) refusing to give his requested jury instruction on manslaughter after the prosecutor misstated the law on manslaughter during his closing argument.

## I. MOTION TO SEVER

■ Appellant argues that his acts of murder and child abuse were not part of a single criminal episode as defined in Utah Code Ann. § 76–1–401 (1978) because they were not closely related in time, and because he did not have the same criminal objective in committing each of them. Appellant also argues that joinder of the child abuse charge prejudiced the jury against him on the murder charge.

Under the Utah Rules of Criminal Procedure, two or more offenses may be joined in the same indictment or information, and may be tried at the same trial, "if the offenses charged arise out of a criminal episode as defined in Section 76–1–401, U.C.A.1953." Utah R.Crim.P. 9(a); [3] see also State v. McCumber, 622 P.2d 353, 356 (Utah 1980). Section 76–1–401 defines a "single criminal episode" as "all conduct which is closely related in time and is inci-

dent to an attempt or an accomplishment of a single criminal objective."

In the present case, appellant killed Cindy and, only minutes later, attempted to strangle Roberto. The evidence indicates that appellant's purpose in attempting to strangle Roberto was to keep Roberto from telling others that he had killed Cindy. These two events were closely related in time and incident to the accomplishment of a single criminal objective, namely to kill Cindy and avoid being caught, so as to be part of a single criminal episode. Consequently, the offenses could properly be joined under rule 9(a).

■ Severance of properly joined offenses is not available as a matter of right, *State v. Velarde*, 734 P.2d 440, 444 (Utah 1986); *see also State v. Studham*, 655 P.2d 669, 671 (Utah 1982), but is only available "[i]f it appears that a defendant or the prosecution is prejudiced by a joinder of offenses or defendants in an indictment or information, or by a joinder for trial together." Utah R.Crim.P. 9(d). Further, the grant or denial of severance is a matter within the discretion of the trial judge, so we reverse a conviction only if the trial judge's refusal to sever charges "is a clear abuse of discretion in that it sacrifices the defendant's right to a fundamentally fair trial." *State v. Pierre*, 572 P.2d 1338, 1350 (Utah 1977) *cert. denied* 439 U.S. 882, 99 S.Ct. 219, 58 L.Ed.2d 194 (1978); *see also State v. McGrath*, 749 P.2d 631, 633 (Utah 1988); *Velarde*, 734 P.2d at 444–45; *State v. Saunders*, 699 P.2d 738, 740 (Utah 1985); *McCumber*, 622 P.2d at 356.

■ We must next determine whether joinder of the two offenses was prejudicial to appellant. Appellant's purpose in attempting to sever the offenses was to prevent the jury considering the murder charge from hearing Roberto's testimony concerning appellant's attempt to strangle

---

the whites of the eyes. The medical examiner testified that Roberto's injuries were "more impressive" than those he had seen on ten to fifteen people who had died from strangulation.

**3.** Rule 9(a) of the Utah Rules of Criminal Procedure, also codified as Utah Code Ann. § 77–35–9

(1982) and enacted in 1980, replaced the former law, Utah Code Ann. § 77–21–31 (1953). Because the relevant portions of section 77–21–31 and rule 9(a) are substantially similar, we use pre–1980 cases, which interpret section 77–21–31, to assist us in interpreting rule 9(a).

him.[4] While evidence of other crimes may not be used to "prove the character of a person in order to show that he acted in conformity therewith," it "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Utah R.Evid. 404(b). In determining the admissibility of evidence for such a purpose, the court must weigh its probative value against its tendency to unfairly prejudice the defendant. Utah R.Evid. 403; *see also State v. Johnson*, 748 P.2d 1069, 1074–75 (Utah 1987); *State v. Jamison*, 767 P.2d 134, 137 (Utah Ct.App.1989).

Appellant was charged with second degree murder pursuant to Utah Code Ann. § 76–5–203 (1986). Because intent is an element of the offense under this section, the State must carry the burden of proving appellant's intent. *See State v. Warden*, 784 P.2d 1204, 1208 (Ct.App.1989). This intent "need not be proved by direct evidence, but may be inferred from defendant's conduct and surrounding circumstances." *State v. Davis*, 711 P.2d 232, 234 (Utah 1985). Aside from Cindy's wounds and the general situation in the apartment, the only evidence that the State could bring forward to shed light on defendant's conduct and the surrounding circumstances was Roberto's testimony, both as the murder witness and as the subsequent assault victim. We find that Roberto's testimony, especially his account of appellant's threat to kill him if he said anything about the night's events, is admissible to show defendant's intent to cover up his responsibility for the murder. *See Jamison*, 767 P.2d at 137. This testimony is reasonably necessary because Roberto was the only eyewitness to both the murder and his own abuse, and the State had no alternate means of bringing the same evidence before the jury. *See Johnson*, 748 P.2d at 1075 (reception of such evidence is justified by necessity, and if other evidence has established the element of the crime involved, the probative value of showing another offense is diminished). Consequently, even if the charges would have been severed, Roberto's testimony would have been admissible. Thus, severance would have served no purpose, and the trial judge did not abuse his discretion in refusing to grant appellant's motion.[5] *See McGrath*, 749 P.2d at 633–34 (defendant's eight drug charges were properly joined when they were similar in nature, involved the same persons, and occurred over a relatively brief period of time).

We note that section 76–1–401 also states that "[n]othing in this part shall be construed to limit or modify the effect of section 77–21–31 in controlling the joinder of offenses and defendants in criminal proceedings." Utah Code Ann. § 77–21–31 was repealed in 1980 and superseded by rule 9(a) of the Utah Rules of Criminal Procedure. 1980 Utah Laws, Ch. 14. Like rule 9(a), section 77–21–31 permitted the charging of several crimes in a single indictment or information when they "are of the same or similar character, or are based on the same act or transaction, or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Although the legislature

---

4. Appellant argues that admission of Roberto's abuse testimony would prejudice the jury, as proscribed by the Utah Supreme Court, which stated:

[c]are must be taken that the statute is not misused to deprive an accused of a fair trial upon an offense by joining different offenses so that evidence concerning charges unrelated in time and nature, which would normally not be admissible upon a trial, could be admitted as to the multiple offenses in an effort to stigmatize the defendant and thus make it questionable that the jury would give a fair and dispassionate consideration to the evidence on the first charge.

*State v. Gotfrey*, 598 P.2d 1325, 1328 (Utah 1979); *see also* Utah R.Evid. 404(b). Consequently, he concludes that his motion to sever should have been granted as in *Saunders*, 699 P.2d at 741–42.

5. We note that the court gave a clarifying instruction to the jury which would tend to offset any potential unfair prejudice:

A separate crime or offense is charged in each count of the Information. Each charge and the evidence pertaining to it should be considered separately. The fact that you may find the accused guilty or not guilty as to one of the offenses charged should not control your verdict as to any other offense charged.

has not amended section 76–1–401 to refer to rule 9(a) rather than to section 77–21–31, we deem that this portion of section 76–1–401 refers to rule 9(a) because the purposes of the two statutes are so similar. Therefore, we find that the line of cases relied upon by defendant to establish that the present circumstances were not part of a single criminal episode are not applicable because they do not deal with the issues of joinder and severance of charges, but with determining if criminal acts are separate for double jeopardy purposes. *See, e.g., State v. Porter*, 705 P.2d 1174 (Utah 1985) (defendant's actions did not constitute a single crime for purposes of determining whether defendant could be convicted of two offenses when he broke into a laundry room and an apartment in the same building); *State v. Cornish*, 571 P.2d 577 (Utah 1977) (two offenses were not part of the same criminal episode for the purpose of determining whether defendant could be convicted of two separate offenses when the offenses were separated in time by one full day and were separate in objective); *State v. Ireland*, 570 P.2d 1206 (Utah 1977) (defendant committed two separate and distinct offenses when the offenses were committed sixty-five miles apart and the criminal objective of the robbery was entirely different than that of the kidnapping).

## II. JURY INSTRUCTION

■ Appellant also argues that the trial court committed reversible error by refusing to give a requested jury instruction which he alleges was necessary to present his theory of manslaughter to the jury. He maintains that this error was aggravated by the prosecutor's misstatement of the law of manslaughter in his closing argument.

It is well established that a "defendant is entitled to have the jury instructed on his theory of the crime if there is any basis in the evidence to support that theory." *State v. Brown*, 607 P.2d 261, 265 (Utah 1980). This instruction should not incorrectly or misleadingly state the material rules of the law. *State v. Aly*, 782 P.2d 549, 550 (Utah Ct.App.1989).

Appellant's theory of the case was that he was enraged and upset by being replaced as Cindy's boyfriend and being ordered out of the household after having diligently cared for Cindy's children in her absence. Under the influence of this strong emotion, he took Cindy's life. For this theory of the case to be properly presented to the jury, the jury had to be instructed on the law of manslaughter.

The relevant portion of the law dealing with manslaughter is set forth in Utah Code Ann. § 76–5–205(1) (1985), as follows: "Criminal homicide constitutes manslaughter if the actor: ... causes the death of another under the influence of extreme emotional disturbance for which there is a reasonable explanation or excuse." Appellant contends that the jury was not adequately instructed on this law because his requested instruction was not submitted to the jury.

Our review of the record indicates that the trial court gave the jury three instructions on manslaughter. These instructions set forth the elements of manslaughter delineated in the statute, and further stated:

> For Manslaughter to apply, the "extreme mental or emotional disturbance" must be triggered by something external from the accused, and his reaction to such external stimulus must be reasonable ...

and

> In determining whether or not the defendant acted under the influence of extreme emotional disturbance, you should consider all of the circumstances surrounding the death of Cindy Hernandez. If you find that defendant, JUAN LOPEZ, caused the death of Cindy Hernandez while under the influence of extreme emotional disturbance, you must next determine whether or not there was a reasonable explanation for such disturbance.

Appellant's requested instruction closely parallels the instructions read to the jury, with the addition of the following paragraph: "In referring to the reasonableness of the excuse or explanation, it is not required that the killing be reasonably explained or excused. Rather all you must find is that there is a reasonable explana-

tion or excuse for the extreme mental disturbance." Counsel for the defense indicated that she had included this paragraph because she thought that "it was important to be able to distinguish for the jury the fact that it is the emotional disturbance that must be reasonably explained rather than the killing itself."

The instructions given to the jury directly parallel the statutory language and correctly instruct on the applicable law. Further, they clearly indicate that the jury must determine whether there was a reasonable explanation for the emotional disturbance. Although appellant's requested instruction emphasized this portion of the law, it did not add anything of substance to the instruction.

Although failure to instruct the jury on all elements is reversible error, the trial court does not err in refusing an instruction if its content is set out in other instructions. *State v. Reedy*, 681 P.2d 1251, 1252–53 (Utah 1984). "[B]eyond the substantive scope, correctness, and clarity of the jury instructions, their precise wording and specificity is left to the sound discretion of the trial court." *Aly*, 782 P.2d at 550. We find no abuse of discretion on the part of the trial court in refusing appellant's proffered instruction.

■ Appellant also alleges that the refusal of this proffered instruction was reversible error in the light of misleading statements made by the prosecutor to the jury. In his closing argument, the prosecutor stated that the jury had to find a reasonable justification for the killing rather than a reasonable justification for appellant's extreme emotional disturbance. This was clearly a misstatement of the law on an issue crucial to appellant's theory of the case.

■ Whether remarks made by counsel are so objectionable as to merit reversal in a criminal case are measured by the following test: (1) Did the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict; and (2) were the jurors, under the circumstances of the particular case, probably influenced by the remarks? *State v. Hopkins*, 782 P.2d 475, 478 (Utah 1989); *State v. Troy*, 688 P.2d 483, 486–87 (Utah 1984); *State v. Valdez*, 30 Utah 2d 54, 513 P.2d 422, 426 (1973).

Because the prosecutor misstated the law, his remarks called to the jurors' attention matters they would not be justified in considering, thus satisfying the first prong of the test. However, we find that the jurors could not have been significantly influenced by the improper remarks, so the remarks did not constitute reversible error.

First, appellant's counsel immediately objected to the prosecutor's statement, saying that "[t]he statute and instructions clearly say that the reasonable excuse or explanation is for the emotional disturbance, not for the act itself. And I think he is mischaracterizing what the law is." The court agreed. Later, in her closing argument, defense counsel again restated the relevant law at great length, concluding:

> Look carefully at that manslaughter instruction. Actually there are two. It doesn't tell you that the killing has to be reasonable. I don't know that there is ever a situation where a killing is reasonable. What it tells you is that there has to be a reasonable explanation for the reasonable disturbance, and there clearly is in this case.

After having been correctly instructed on the law, and then having heard the prosecutor's error explicitly corrected and a very detailed explication of defendant's manslaughter theory, the jury should have had a clear understanding of this aspect of the law and its application to appellant.

Second, in evaluating the effect of the prosecutor's improper remarks on the jury, which involves a consideration of the circumstances of the case as a whole, it is appropriate to look at the evidence of appellant's guilt:

> "If proof of defendant's guilt is strong, the challenged conduct or remark will not be presumed prejudicial." Likewise, in a case with less compelling proof, this Court will more closely scrutinize the conduct. If the conclusion of the jurors is based on their weighing conflicting

evidence or evidence susceptible of differing interpretations, there is a greater likelihood that they will be improperly influenced through remarks of counsel ... and a small degree of influence may be sufficient to affect the verdict.

*Troy,* 688 P.2d at 486 (quoting *State v. Seeger,* 4 Or.App. 336, 479 P.2d 240 (1971)). In the present case, the evidence tending to prove defendant's guilt is overwhelming when balanced against the only evidence tending to prove his manslaughter theory, his improbable, contradictory, and self-serving accounts of his actions. We conclude that the jury simply chose not to believe defendant's theory. We, therefore, find that the prosecutor's remarks were not prejudicial, and that the trial court acted within its discretion in refusing to give defendant's proffered instruction.

Affirmed.

BENCH and LARSON, JJ., concur.