STATE of Utah, Plaintiff and Appellee,

v.

Robert T. HASTON, Defendant
and Appellant.

No. 900021–CA.

Court of Appeals of Utah.

May 6, 1991.

Rehearing Denied May 30, 1991.

Lisa J. Remal and Ronald S. Fujino, argued, Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., and Judith S.H. Atherton, Asst. Atty. Gen., argued, Salt Lake City, for plaintiff and appellee.

Before GREENWOOD, JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Defendant Robert T. Haston appeals his conviction for attempted criminal homicide, a second degree felony. Defendant also challenges enhancement of his sentence for use of a firearm and imposition of fines, surcharge, costs, and restitution. We affirm his conviction but remand for resentencing.

## FACTS

Defendant's companion, David Ezzeddine, had received his government assistance payment on August 2, 1989. The proceeds were used to defray the expenses incurred in the course of a protracted drinking party. Defendant, Ezzeddine, and Leonard Tate spent approximately two days engaged in nearly non-stop barhopping and imbibing, joined sporadically by three other companions. Over the course of this bacchanal, the revelers consumed a fifth-gallon of peppermint schnapps, several pitchers of beer, at least 120 cans of beer, and a quantity of vodka.

On the afternoon of the second day, the festivities having moved to a motel on Salt Lake City's west side, Ezzeddine asked defendant to see his gun. Defendant gave Ezzeddine the gun, a revolver, which was then passed to Tate, and returned to defendant. Defendant offered a version of subsequent events which was at odds with the details related by Tate and Ezzeddine. Defendant claimed to have been loading the gun in order to be prepared to protect the group from possible burglars. In contrast, Tate and Ezzeddine claimed defendant was brandishing the gun while remonstrating Tate for the amount of beer he had permitted the others to consume. Tate claims that when he challenged defendant's bravado, defendant shot him.

Defendant was tried by a jury and convicted of attempted criminal homicide, for which he was sentenced to a term of one-to-fifteen years. The court then enhanced the sentence with a mandatory one-year term and a discretionary zero-to-five year term for use of a firearm and ordered the sentences to be served consecutively. On appeal, defendant challenges the imposition of two additional prison terms as sentence enhancement, and contests the imposition of restitution, fines, surcharge, and costs in the form of attorney fees. Defendant also claims that jury instructions concerning the burden of proof were defective, misstating and inadequately explaining the law, and that the prosecution's misstatement of the law on the affirmative defense of intoxication was prejudicial. Finally, he claims the "depraved indifference" instruction was legally insufficient.

## REASONABLE DOUBT INSTRUCTION

■ Defendant challenges Instruction Number Seven as failing to adequately define the beyond-a-reasonable-doubt standard and claims the instruction could have allowed the jury to convict on an improper civil standard of proof.[1] We will reverse

---

1. Instruction Number Seven read:

All presumptions of law, independent of evidence, are in favor of innocence, and a defendant is presumed innocent until he is

on the basis of an improper instruction only where the defendant demonstrates prejudice stemming from the instructions viewed in the aggregate. *State v. McCumber,* 622 P.2d 353, 359 (Utah 1980). We review jury instructions in their entirety, *State v. Bingham,* 684 P.2d 43, 45 (Utah 1984), and will affirm "[w]hen taken as a whole ... they fairly tender the case to the jury, [even where] one or more of the instructions, standing alone, are not as full or accurate as they might have been...." *State v. Brooks,* 638 P.2d 537, 542 (Utah 1981). *See also Cage v. Louisiana,* —— U.S. ——, 111 S.Ct. 328, 329, 112 L.Ed.2d 339 (1990) ("In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole."); *State v. Johnson,* 774 P.2d 1141, 1146 (Utah 1989) (jury instructions must be construed as a whole).

Defendant relies heavily on Justice Stewart's concurring opinion in *State v. Johnson,* 774 P.2d 1141, 1148 (Utah 1989), which was joined in by two other justices and thus is the opinion of the Court as concerns the reasonable doubt instruction challenged in that case. Justice Stewart's opinion, drawn largely from his dissenting opinion in *State v. Ireland,* 773 P.2d 1375, 1380 (Utah 1989), analyzed specific language commonly featured in reasonable doubt instructions. Two discrete criteria may be distilled from these opinions. First, as defendant notes, the instruction should contain terminology which unambiguously expresses the prosecution's burden to "obviate all reasonable doubt." *Ireland,* 773 P.2d at 1381 (Stewart, J., dissenting). *See also Johnson,* 774 P.2d at 1149 (Stewart,

J., concurring in the result). That precise language is contained in Instruction Number Seven. Second, use of the "weighty affairs of life" language is proscribed. *See Johnson,* 774 P.2d at 1148 (Stewart, J., concurring in the result). Instruction Number Seven omits any reference to "weighty affairs." The instruction thus conforms with both prongs of the *Johnson/Ireland* directive.

In *Johnson,* the Court instructed trial courts to avoid jury instructions with language comparing the reasonable doubt standard with a juror's personal standard in deciding the "weighty affairs" of his or her life. *Id.* Such language "tends to diminish and trivialize the constitutionally required burden-of-proof." *Id.* (quoting *Ireland,* 773 P.2d at 1381 (Stewart, J., dissenting)). "A jury must have a greater assurance of the correctness of its decision, if it is to comply with the constitutional mandate, than the individual jurors are likely to have in making the 'weighty' decisions they confront in their own lives." *Ireland,* 773 P.2d at 1381 (Stewart, J., dissenting).

Defendant particularly objects to the inclusion of the following sentence: "Proof beyond a reasonable doubt is that degree of proof which satisfies the mind, convinces the understanding of those who are bound to act conscientiously upon it and obviates all reasonable doubt." Defendant claims that this sentence is contextually similar to a phrase rejected by Justice Stewart in his dissent in *Ireland,* where the instruction stated that the jury should convict if it had "an abiding conviction of the truth of the

---

proved guilty beyond a reasonable doubt. And in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to an acquittal.

I have heretofore told you that the burden is upon the State to prove the defendant guilty beyond a reasonable doubt. Proof beyond a reasonable doubt does not require proof to an absolute certainty. Now by a reasonable doubt is meant a doubt that is based on reason and one which is reasonable in view of all the evidence. It must be a reasonable doubt

and not a doubt which is merely fanciful or imaginary or based on a wholly speculative possibility. Proof beyond a reasonable doubt is that degree of proof which satisfies the mind, convinces the understanding of those who are bound to act conscientiously upon it and obviates all reasonable doubt. A reasonable doubt is a doubt which reasonable men and women would entertain, and it must arise from the evidence or the lack of evidence in this case.

charge...." *Id.* The first portion of the challenged sentence mirrors language approved in *State v. Tillman,* 750 P.2d 546, 572–73 (Utah 1987), while the remainder of the sentence responds to Justice Stewart's criticism in *Ireland,* 773 P.2d at 1382 (Stewart, J., dissenting), and *Johnson,* 774 P.2d at 1148 (Stewart, J., concurring in the result), by incorporating the "need [to] obviate a real or substantial doubt" phrase expressed in *Johnson.* 774 P.2d at 1149 (Stewart, J., concurring in the result).

Defendant dissects other portions of Instruction Number Seven in the course of arguing that the instruction did not adequately define the reasonable doubt standard. However, several sentences now challenged by defendant are identical to sentences included in the very language of defendant's proposed instruction. Others are identical or textually similar to language approved by the Utah Supreme Court in *Tillman, Johnson,* and *Ireland.* We repeat that it is not the province of an appellate court to peruse each turn of phrase and every clause of a jury instruction. Rather, in search of prejudicial error,

we consider the instruction in its entirety. *Johnson,* 774 P.2d at 1146.

The Supreme Court's rejection of the "weighty affairs" language reflects a concern that analogous language might permit a defendant to be convicted on a standard of proof lower than that which is constitutionally required. *Johnson,* 774 P.2d at 1148 (Stewart, J., concurring in the result). In essence, *Johnson* requires trial courts to avoid terms and phrases which fail to eliminate suggestions that a reasonable doubt is something more than a "mere possible doubt," although the Court did not prescribe particular language. *See id.* at 1148–49.

We have recently held that a reasonable doubt instruction identical to the instruction challenged in the present case satisfied the *Johnson* mandate. *See State v. Pedersen,* 802 P.2d 1328, 1331–32 (Utah Ct.App. 1990).[2] While we recognize that this reasonable doubt instruction is not a model of lucidity and simplicity,[3] it does present an "accurate definition of the burden-of-proof

2. Defendant cites the recent decision in *Cage v. Louisiana,* — U.S. ——, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), claiming the reasonable doubt instruction condemned by the Court is sufficiently similar to the instruction now under review to merit reversal. We disagree. The *Cage* Court focused on phrases equating reasonable doubt with "grave uncertainty" and "actual substantial doubt" and seemed most troubled by a sentence stating that "moral certainty" was required rather than something greater. *Id.* 111 S.Ct. at 329. We find no parallel language in Instruction Number Seven.

3. "Beyond a reasonable doubt" is a concept not readily capable of being imparted to a lay jury. Indeed, during our recent spate of reasonable doubt cases, the position advanced by appellants has often seemed like an argument that we should require the substitution of one set of circular legal mumbo-jumbo for another. This is perhaps one area where a "plain English" approach may be more helpful to the jury than intoning grand concepts. It may be more helpful to explain the burden-of-proof continuum, on the far extreme of which is proof beyond a reasonable doubt. To explain that on a certainty scale of 0–100, proof by a preponderance of the evidence rates a 51, clear and convincing

about a 70, and proof beyond a reasonable doubt something like a 99 may help a jury to flesh out just how certain of guilt they must be to convict a criminal defendant.

The familiar point that a *reasonable* doubt is a doubt which has a basis in reason or logic might be developed. It may be appropriate to suggest that if the jury has no doubt whatever about defendant's guilt, it must convict. If the jurors sense some doubt, they must consider its origin. If the doubt exists because they do not believe the only eyewitness to the crime could have seen the culprit in the darkness of the night from the distance acknowledged, they have a reasonable doubt about defendant's guilt and must acquit unless other evidence resolves that doubt and satisfies them of his or her guilt. If their only doubt stems from some amorphous or purely emotional urge—something like "there's just a feeling I get when the defendant looks at his mother that makes it hard for me to imagine he would do such a thing"—then the doubt they sense, while perceptible, is not a *reasonable* doubt and they must convict. *Cf. Johnson,* 774 P.2d at 1149 (Stewart, J., concurring in the result) ("Certainly a fanciful or wholly speculative possibility ought not to defeat proof beyond a reasonable doubt.").

placed upon the state." [4] *Id.* at 1332.[5]

## PROSECUTORIAL MISSTATEMENT

■ Defendant claims the prosecutor misstated the law regarding the affirmative defense of intoxication during his closing argument. The prosecutor stated:

> The state suggests that you may find ... [defendant] guilty each of three ways, but any of the three ways is sufficient to find him guilty. When you read the instructions, you will note that voluntary intoxication, Instruction 20, does not apply at all to the third way [,]depraved indifference[,] that the government suggests that [defendant] may be found guilty. Doesn't matter how drunk he was. Doesn't matter how drunk people were that he shot.

The "third way" of showing defendant's guilt required proof that defendant knowingly did an act with depraved indifference for life. Utah Code Ann. § 76–5–203(1)(c) (1990); *State v. Standiford*, 769 P.2d 254, 261 (Utah 1988). Thus, intoxication may be a defense if defendant's intoxication defeated his capacity to form the requisite intent. Utah Code Ann. § 76–2–306 (1990); *State v. Wood*, 648 P.2d 71, 89 (Utah), *cert. denied*, 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982). The state concedes that the prosecutor did indeed misrepresent the law to the jury, but counters that the error was immediately cured by the judge's prompt reference to the instructions. Defendant responds that the instructions themselves were confusing and misleading to the jury, so that the court's redirection

of the jury's attention to the instructions did not cure the prosecutor's misstatement.

We consider challenges to prosecutorial comments under a two step analysis. First, we determine whether the remarks directed jurors' attention to "matters which they would not be justified in considering in determining their verdict." *State v. Lopez*, 789 P.2d 39, 45 (Utah Ct.App.1990). We next consider the likelihood that the jury was influenced in its verdict by the comments. *Id.* The state agrees the prosecutor's statement mischaracterized the law regarding voluntary intoxication as a defense to the element of the requisite mental state. Hence, the first prong of the test is satisfied.

Although the trial judge failed to expressly rule on whether the prosecutor misstated the law, the judge called the attention of the jury to the written instructions which addressed the burden of persuasion for an affirmative defense. The court's response to defense counsel's objection did not directly contradict the prosecutor or correct his misstatement, as may have been appropriate. *Cf. id.* (court immediately corrected prosecutor's misstatement of the law in presence of the jury). However, implicit in the court's response to the objection was the assurance that the written instructions, not the prosecutor's comments, accurately stated the law and should be the jury's sole referent in considering the affirmative defense of intoxication. Therefore, our analysis of the second *Lopez* prong necessarily reaches the substantive language of the allegedly curative instructions.

**4.** "Omit needless words! Omit needless words! Omit needless words!" The late emperor of modern grammatical style, Professor William Strunk, Jr. of Cornell University, so began each lecture on brevity and clarity. W. Strunk & E.B. White, *The Elements of Style*, xiii (3rd ed. 1979). Many American courts fashioning jury instructions echo his call, *see, e.g., People v. Smith*, 77 Ill.App.3d 666, 33 Ill.Dec. 249, 253, 396 N.E.2d 638, 642 (1979); *State v. Pioletti*, 246 Kan. 49, 785 P.2d 963, 970 (1990); *State v. McKenzie*, 177 Mont. 280, 581 P.2d 1205, 1219 (1978), *vacated on other grounds*, 443 U.S. 903, 99 S.Ct. 3094, 61 L.Ed.2d 871 (1979); *Commonwealth v. Sherlock*, 326 Pa.Super. 103, 473 A.2d 629, 631 (1984), a group which we unhesitatingly join even though our own opinions may occasionally suggest a different attitude.

**5.** Attempting to capitalize on the *Johnson* and *Ireland* opinions, defendant in this case proposed a reasonable doubt instruction which would have expressly negated the "weighty affairs" language. It is doubtful that an effort to define the reasonable doubt standard by telling the jury what it is *not* would be illuminating. In any event, the court rejected defendant's proffered instruction in favor of Instruction Number Seven. We need not consider the acceptability of the instruction rejected by the court since we hold that Instruction Number Seven adequately comports with the *Johnson* criteria. *See Pedersen*, 802 P.2d at 1332.

The law of voluntary intoxication as an affirmative defense was explained in two instructions. Instruction Number Twenty stated:

Voluntary intoxication is not a defense to a criminal charge unless such intoxication negates the existence of the mental state which is an element of the offense; however, if recklessness or criminal negligence establishes an element of the offense and the actor is unaware of the risk because of voluntary intoxication, his unawareness is not a defense.

Instruction Number Twenty–One provided:

You are instructed that the laws of Utah do not require a defendant to establish intoxication by a preponderance or greater weight of the evidence. The laws of Utah require the defendant to bring forward some substantial evidence which tends to show intoxication. If the defendant has done this, and if such evidence of intoxication when considered with all other evidence in this case raises a reasonable doubt as to whether or not the defendant was able to form the requisite mental state, then you must acquit him.

In *State v. Tebbs*, 786 P.2d 775 (Utah Ct.App.1990), we stated "[a] defendant's burden concerning any affirmative defense is quite limited." *Id.* at 779. *See State v. Moritzsky*, 771 P.2d 688, 691 n. 2 (Utah Ct.App.1989). The burden remains on the state throughout the trial to prove each element of the charged offense beyond a reasonable doubt. At no point does any segment of that burden shift to the defendant. *Tebbs*, 786 P.2d at 779. Once the defendant raises an affirmative defense, supported by some evidence—whether introduced by defense or prosecution—the state must refute the defense beyond a reasonable doubt. *State v. Knoll*, 712 P.2d 211, 215 (Utah 1985). We therefore agree with defendant that the portion of Instruc-

tion Number Twenty–One which "requires the defendant to bring forward some *substantial* evidence which tends to show intoxication" incorrectly states the law, both because the quantum of evidence required is not "substantial evidence" and because even the modicum of evidence necessary to trigger an affirmative defense may come from the prosecution's case and need not be brought forward by defendant. However, no prejudice resulted in this case since evidence of defendant's intoxication was more than substantial and a good part of that evidence was indeed brought forward by defendant.[6] Thus, while the instruction contemplated a greater evidentiary burden on defendant than the law requires to trigger an affirmative defense, that burden was met in this case.

We do not agree with defendant that the misstatement in the instruction was of more far-reaching effect, i.e., that it impermissibly suggested that the burden of persuasion shifted to defendant to demonstrate that he was too intoxicated to formulate the requisite intent. We have noted above that we construe jury instructions as a whole. *Johnson*, 774 P.2d at 1146. Language unambiguously stating that defendant need not prove intoxication by even a "preponderance or greater weight of the evidence" immediately preceded the contested language in Instruction Number Twenty–One. This instruction also stated that acquittal was required if there was a reasonable doubt about whether defendant's intoxication precluded formation of the requisite mental state. Instruction Number Twenty–One must also be read in conjunction with Instruction Number Seven, which advised that the state must prove all elements of the offense "beyond a reasonable doubt." We believe it unlikely that the jury understood that any burden of persuasion or proof had shifted by operation of this instruction.

---

**6.** The state called several witnesses who testified as to defendant's extraordinary alcohol consumption and his resulting demeanor. Defendant also testified as to his state of intoxication, although he need not have done so in order to assert an intoxication defense. *But see Knoll*,

712 P.2d at 215 ("defendant may have to assume the burden of producing some evidence ... if there is no evidence in the prosecution's case that would provide some kind of evidentiary foundation" for an affirmative defense).

Our analysis of the second *Lopez* prong may also include consideration of the weight of the evidence against defendant. *Lopez*, 789 P.2d at 45–46. There was substantial evidence from which the jury could reasonably conclude that defendant's undisputed intoxication was not of such a degree as to vitiate the necessary mental state. Witnesses testified that defendant's skills in arithmetic remained intact—he coherently argued over the amount of beer remaining toward the end of the drinking party, and who had consumed more than his fair share. Defendant's own testimony indicated that prior to the shooting, while he was showing off his revolver, he carefully ensured that the gun was unloaded before passing it around the room. He demonstrated an extensive and detailed recall of the events preceding and surrounding the shooting. Defendant's actions immediately prior to the shooting, as related by eyewitnesses, further suggested a man in possession of coordination and control over his mental faculties. The motel manager testified that immediately after the shooting, defendant was "nonchalant" and calm as he attempted to leave the motel premises.

When proof of a defendant's guilt is strong, we do not presume the challenged comments to be prejudicial. *State v. Troy*, 688 P.2d 483, 486 (Utah 1984). We find nothing in the record, and defendant has supplied no citation thereto, which convinces us of any reasonable likelihood that the jurors were influenced by the prosecutor's remarks regarding the intoxication defense.[7] We conclude that the second *Lopez* prong has not been satisfied and no reversible error resulted from the prosecutor's misstatement of the law.

### DEPRAVED INDIFFERENCE

▇ Instruction Number Eleven required the jury, in considering the attempted criminal homicide charge, to find that defendant "act[ed] under circumstances evidencing a depraved indifference to human life [and] engaged in conduct which created a grave risk of death to Leonard Tate...." Defendant challenges the trial court's rejection of two explanatory sentences which he sought to add to Instruction Number Thirteen, which defined "depraved indifference."

Defendant is entitled to instructions which provide jurors with a clear and meaningful statement of the applicable law. *See State v. Potter*, 627 P.2d 75, 78 (Utah 1981). However, the trial court enjoys the discretion to articulate the law in unadorned and intelligible terms, in order to assist the jury in its task of weighing the evidence on the scales of the law. *State v. Standiford*, 769 P.2d 254, 266 (Utah 1988).

The trial court in this case defined "depraved indifference" as follows:

Depraved indifference refers not to mental subjective state but to the objective circumstances under which the conduct causing the injury occurred. Reckless conduct which has an incidental tragic result will not suffice. At the time of the act, the defendant must know of the risk. Knowledge here refers to the nature of the conduct or the circumstances surrounding it or both, but not the result produced by the conduct. The circumstances of the injury when objectively viewed must evidence a depraved indifference to human life.

Defendant sought to add the following two sentences at the end of the instruction:

In other words, there must be a knowing doing of an uncalled-for act in callous disregard of its likely harmful effect which is so heinous as to be equivalent to a "specific intent" to kill. Examples of this might be unmitigated wickedness, extreme inhumanity or acts of a high degree of wantonness.

Defendant excerpted the omitted sentences principally from *State v. Bolsinger*, 699 P.2d 1214, 1220 (Utah 1985), and as-

---

7. We have noted that the trial court directed the jury to its instructions rather than the prosecutor's comments for the correct statement of applicable law. We further note that defendant did not object at trial to either instruction on intoxication now claimed to be misleading. Indeed, defendant does not refute the state's claim that Instruction Number Twenty–One was defendant's own instruction, offered precisely as defendant proposed it.

serts that similar language was more recently approved in *Standiford*. *See* 769 P.2d at 264. Defendant's proposed sentences are phrased illustratively, and merely seek to explain the law enunciated in the instruction as given. The first sentence simply rephrases the sentence "at the time of the act, the defendant must know of the risk," albeit in arguably more vibrant language. The second sentence is equally emotive, but superfluous. Defendant's basis for inclusion of this sentence is that identical terminology is found in dicta in *Bolsinger*. *See* 699 P.2d at 1220. But defendant has no right to extract favorable rhetoric from any pleasing judicial dissertation and demand its inclusion in jury instructions.[8]

In *Standiford*, the Utah Supreme Court noted that the depraved indifference requirement for a charge of second degree murder "focuses on the gravity of the risk to human life ... and the callousness of attitude toward that risk." 769 P.2d at 262. *Standiford* was ultimately directed at elucidating the distinction between a "grave" risk of death and a "substantial and unjustifiable" risk of death, the latter being the standard required for the lesser charge of manslaughter. The Court stated that a trial court must instruct the jury that the defendant knowingly created a risk of death which he or she knew to be a grave risk, meaning a highly likely probability of death, and that the defendant's conduct exhibited an "utter callousness and indifference toward human life." *Standiford*, 769 P.2d at 264. The instructions given in the instant case, while not models of clarity and precision, adequately addressed those concerns. *Cf. id.* at 264 ("gravity of the risk of death was not explained with quite the [required] precision ... nevertheless ... we do not believe the jury was misled"). Defendant's proffered supplementary language was surplusage, with at least some potential to confuse the jury, and the trial court did not abuse its discretion in refusing it.

---

8. In a sense, the last sentence proposed by defendant raises more questions than it answers and thus is not necessarily helpful in describing "depraved indifference." What is "wickedness"

## SENTENCING

■ Defendant's sentence for the charge of attempted criminal homicide was enhanced for use of a firearm. Additional consecutive terms of one year and zero-to-five years were imposed. Defendant challenges the aggregate enhancement period as potentially exceeding the maximum term of five years. *See State v. Webb*, 790 P.2d 65, 87 (Utah Ct.App.1990). The state agrees that defendant's sentence is improper on that basis. Accordingly, the firearms enhancement terms are vacated and the case is remanded for such resentencing as will alleviate this concern.

■ Defendant also challenges the order of restitution, fines, surcharge, and attorney fees. The court is required to order restitution to crime victim's if it finds that restitution is not inappropriate after analysis of certain statutory factors. Utah Code Ann. § 76–3–201 (1990). While the court has the discretion to award or deny restitution, *State v. Snyder*, 747 P.2d 417, 420 (Utah 1987), the judge *must* state the reasons for the decision in the trial record. Utah Code Ann. § 76–3–201(3)(b)(i) (1990). Although the statute does not impose the requirement of full formal findings, a requirement which would perhaps simplify and expedite appellate review, the court must declare reasons within the statutory framework for awarding or denying restitution. A statement in the nature of findings which adequately apprises a reviewing court of the trial court's reasoning is minimally required. We are unable to determine from the record which, if any, of the factors enunciated in section 76–3–201(3)(b) were considered by the trial court.

■ Imposition of a fine, and the accompanying mandatory surcharge, is a matter left to the discretion of the trial court. Utah Code Ann. §§ 63–63a–1 (1989), 76–3–301.5(5) (1990). No particular explanation needs to be made by the trial court.

and when is it "unmitigated?" What is "inhumanity" and when is it "extreme?" What is "wantonness" and when has it reached a "high degree?"

Costs, including reimbursement for legal defense fees, may be taxed to the defendant at the court's discretion. Utah Code Ann. § 77–32a–1 (1990). However, the court may not tax costs if the defendant is or will be unable to pay them. Utah Code Ann. § 77–32a–3 (1990). Necessarily, the court must undertake an analysis of the defendant's ability to pay costs before ordering payment, and must consider the impact of restitution awards on the defendant's ability to pay. *Id.* As with the matter of restitution, no formal findings are statutorily mandated, although appellate review becomes more complicated when the trial court fails to make formal findings, and becomes impossible when no insight into the court's rationale is discernible from the record.

Because we have no record before us to demonstrate compliance with sections 76–3–201(3)(b) and 77–32a–3, we remand for supplementary findings on the questions of restitution and responsibility for attorney fees, together with such additional proceedings as may be necessary to permit the making of adequate findings.

## CONCLUSION

The challenged jury instructions do not require reversal and defendant's conviction is affirmed. We vacate the firearms enhancement sentence and the award of restitution and costs and remand to the trial court for resentencing and reconsideration of restitution and costs in accordance with our decision.[9]

GREENWOOD and JACKSON, JJ., concur.

---

9. We have considered defendant's other arguments and find them to be without merit and therefore decline to address them herein. *See State v. Carter,* 776 P.2d 886, 888 (Utah 1989) ("Court need not analyze and address in writing each and every argument, issue or claim raised...."); *State v. Jones,* 783 P.2d 560, 565 (Utah Ct.App.1989) (court will not engage in "redundant literary exercise" to treat meritless issues).